DECISION AND JUDGMENT ENTRY
{¶ 1} This accelerated appeal is from the January 7, 2008 judgment of the Wood County Court of Common Pleas, which granted appellee, Huntington Bancshares, Inc. (hereinafter "Huntington") judgment on the pleadings. Upon consideration of the *Page 2 
assignments of error, we affirm the decision of the lower court. Appellant, Bottomline Ink, Corporation, (hereinafter "Bottomline") asserts the following assignments of error on appeal:
 {¶ 2} "Appellant's Assignment of Error Number One.
 {¶ 3} "The Trial Court Erred in Granting Judgment on the Pleadings Where Evidence Outside the Pleadings is Necessary to Resolve an Ambiguity Within the Contract.
 {¶ 4} "Appellant's Assignment of Error Number Two.
 {¶ 5} "The Trial Court Erred in Granting Judgment on the Pleadings Where Evidence Outside the Pleadings is Necessary to Determine Whether the Contract is Governed by the Uniform Commercial Code."
 {¶ 6} Bottomline brought a breach of contract lawsuit against Huntington, as successor by merger with Sky Financial Group, Inc. (hereinafter "Sky"). Bottomline asserted that in October 2006 it had entered into a five-year service contract with Sky to provide various printing, warehousing, and organization services for bank branches located in Northwestern Ohio. Huntington acknowledged in its answer to the complaint that it is obligated to be bound by the contracts of Sky. However, Bottomline alleges that Huntington represented in June 2007 that it would discontinue the use of the services of Bottomline as outlined in the contract with Sky.
 {¶ 7} Bottomline alleges that Huntington has asserted that it is entitled, at its discretion, to terminate the services of Bottomline at any time based upon the language in the contract, which states that: "The locations above can be dropped or added by Sky at *Page 3 
any time upon 14 days notice." This language was contained in a schedule attached to the services contract which sets forth the services to be performed. Bottomline contends that while Huntington can reduce the number of branches through closings, any open branches must be serviced by Bottomline. Bottomline argues that any other interpretation of the contract would conflict with the intentions of the parties as stated in their contract and as evidenced by their prior dealings and negotiations. Bottomline further contends that Huntington has refused to use the services of Bottomline at any former Sky bank branch except one location identified as Sky Insurance. At the time the lawsuit was filed, 49 months remained on the service contract, with the balance of the contract valued in excess of $8.5 million.
 {¶ 8} Bottomline sought declaratory judgment of its rights under the contract, as well as damages for breach of contract. Huntington sought a judgment in its favor based on the pleadings.
 {¶ 9} In consideration of Huntington's Civ. R. 12(C) motion and based upon the allegations of the pleading and the contract attached to the complaint, the trial court determined that: (1) the contract between the parties was fully integrated; (2) the pricing schedule attached to the contract contained a provision that the branch locations could be dropped or added by Sky at any time; (3) Huntington assumed all of the obligations and rights of Sky after the merger of the two companies; (4) the contract was not ambiguous and, therefore, parol evidence was not admissible to alter the terms of the contract; (5) the contract was a service contract, not an exclusive requirements contract and, therefore, does not fall within the scope of the Ohio Commercial Code; and that (6) there is no *Page 4 
provision under the contract that would prevent Huntington from dropping all locations except for one. Based upon these findings, the trial court determined that Bottomline could not succeed on any of its claims against Huntington and granted Huntington judgment on the pleadings. Bottomline then appealed to this court.
 {¶ 10} Bottomline argues in his first assignment of error that the trial court erred in finding that the contract was not ambiguous. Bottomline argues that permitting Sky to drop any branch location for any reason gives Sky the right to terminate the contract at any time. Such an interpretation renders meaningless the remaining provisions of the contract which demonstrate that the parties contemplated a long-term contract. Bottomline argues that these long-term, exclusive contract implications are evidenced by: (1) the five-year term of the contract; (2) a termination clause, which provides for termination by either party after 30 days written notice and good cause, (3) an assignment provision, which anticipates the circumstances of a merger (but did not include an option for Sky to terminate the contract in the event of a merger); (4) the pricing schedule begins at a quantity that includes all Sky branch locations, with an implication that there would be an addition of branches, not a reduction, at the same pricing rate; and (5) the requirement that Bottomline work with a particular vendor for particular items (rather than Sky purchasing directly from that vendor).
 {¶ 11} The interpretation of a written contract is a question of law.Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. Therefore, we review the trial court's decision de novo. Matrix Technologies, Inc. v. Kuss Corp., 6th Dist. No. L-07-1301,2008-Ohio-1301, ¶ 11, citing Grabnic v. Doskocil, *Page 5 
11th Dist. No. 02-P-0116, 2005-Ohio-2887. Ordinary words in a written contract must be "given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument. Alexander v. Buckeye Pipe LineCo., supra at paragraph two of the syllabus. The parol evidence rule prohibits a party from contradicting or supplementing a written, fully-integrated contract with extrinsic evidence of prior or contemporaneous agreements, whether oral or written. Ed Schory Sons,Inc. v. Society Natl. Bank (1996), 75 Ohio St.3d 433, 440,1996-Ohio-194.
 {¶ 12} However, parol evidence of a general custom or trade usage can be used to "show that the parties to a written agreement employed terms having a special meaning within a certain geographic location or a particular trade or industry not reflected on the face of the agreement." Alexander v. Buckeye Pipe Line Co., supra at paragraph three of the syllabus. See, also, Lincoln Elec. Co. v. St. Paul Fire andMarine Insurance Co. (6th C.A., 2000), 210 F.3d 672, 684, fn. 12 ("Extrinsic evidence can become a consideration before an ambiguity has been identified from the face of the contract as a matter of law, in the limited sense that such evidence can assist the court in determining whether, as a matter of law, two plausible interpretations exist in the manner necessary to give rise to the existence of an ambiguity.").
 {¶ 13} In this case, we agree with the trial court that the language of the contract is clear and capable of only one meaning. Furthermore, because the contract is fully integrated, the court could not consider extrinsic evidence when interpreting the contract's provisions. *Page 6 
 {¶ 14} The provision at issue clearly allows Sky to drop any branch at any time without limitation. The fact that the parties anticipated a long-term contract and made provision for the increase in branches to be serviced does not change the fact that the contract also allowed for flexibility regarding the total number of branches to be serviced. While the reduction of the branches to be serviced could significantly affect Bottomline's profit margin, such reduction is not the equivalent of terminating the contract. A contract between the parties remains, but it is not the exclusive contract that Bottomline desired. It is not this court's responsibility to interpret the contract in such a manner to avoid the hardship one party faces because it did not anticipate the negative consequences of the language to which they agreed. Because the contract was fully integrated, extrinsic evidence cannot be considered in interpreting its unambiguous provisions.
 {¶ 15} Bottomline further argues that letters from Sky contemporaneous with the writing of the contract establish that the provision at issue was capable of another meaning unique to the industry. In one of those letters, Sky stated that it added the language at issue because Sky would need to add or drop branches to be serviced but only as "required by the business." Bottomline read this phrase to mean only the closing and opening of bank branch as the business of banking requires. Even when we consider this extrinsic evidence and whether it demonstrates that the language at issue is capable of more than one meaning, we find that it does not support Bottomline's position. Limiting Sky's right to drop branches because of "business requirements" does not limit Sky to dropping and adding branches only because of branch closings.
 {¶ 16} Wherefore, we find Bottomline's first assignment of error not well-taken. *Page 7 
 {¶ 17} In its second assignment of error, Bottomline argues that the trial court erred by failing to consider evidence beyond the pleadings to determine whether the contract falls under the scope of the Ohio Uniform Commercial Code. Bottomline argues that the primary purpose of the contract was the sale of goods and that Bottomline was not merely acting as the agent of Sky to secure the printing supplies. Furthermore, Bottomline argues that there is a question of fact as to whether the contract is predominately a sale of goods or services.
 {¶ 18} We find that the nature of this contract can clearly be determined as a matter of law. The contract is titled as a service contract and Bottomline agreed to perform services which included inventory and printing services. Therefore, we agree with the trial court that R.C. Chapter 1302, the Ohio Uniform Commercial Code, is not applicable to this case. Appellant's second assignment of error is not well-taken.
 {¶ 19} Having found that the trial court did not commit error prejudicial to appellant, the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
 JUDGMENT AFFIRMED. *Page 8 
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., William J. Skow, J., Concur. *Page 1