[Cite as *Findley v. Union Cty. Mem. Hosp.*, 2014-Ohio-3547.]

### IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### UNION COUNTY

GLORIA FINDLEY,

      PLAINTIFF-APPELLANT,          CASE NO.  14-13-20

      v.

MEMORIAL HOSPITAL OF UNION
COUNTY SLEEP LAB, ET AL.,          O P I N I O N

      DEFENDANTS-APPELLEES.

Appeal from Union County Common Pleas Court
Trial Court No. 2011 CV 0087

**Judgment Affirmed**

Date of Decision:   August 18, 2014

**APPEARANCES:**

    *Gloria Findley,* **Appellant**

    *Susan Healy Zitterman and John S. Wasung*  **for Appellees**

**SHAW, J.**

{¶1} Plaintiff-Appellant Gloria Findley ("Gloria") appeals the September 25, 2013 judgment of the Union County Common Pleas Court, granting summary judgment in favor the Defendants-Appellees, Memorial Hospital of Union County Sleep Lab ("MHUC Sleep Lab"), et al. (collectively the "Defendants-Appellees"). On appeal, Gloria contends that the trial court erred by granting the Defendants-Appellees' motion for summary judgment because there were genuine issues of material fact as to whether Gloria was sexually assaulted during a sleep study at MHUC Sleep Lab. For the reasons that follow, we affirm the trial court's judgment.

{¶2} Around 8:00 p.m. on January 7, 2009, Gloria went to the MHUC Sleep Lab to participate in a sleep study. Upon her arrival, Calisto Atriano ("Atriano") introduced himself to Gloria as a sleep lab technician who would be monitoring her sleep study that night. Atriano subsequently led Gloria to her room where Gloria changed into her pajamas and watched television. Shortly after, Atriano came back to Gloria's room and started to apply leads on Gloria's arms, legs, back, and face. Gloria then fell asleep but was awoken shortly thereafter when Atriano came into her room to re-tape one of the leads that had fallen off her leg. Several hours later, Atriano came into the room a second time, at Gloria's request, to unhook Gloria from the monitor so she could use the bathroom.

{¶3} Gloria was awakened around 6:00 a.m. on January 8, 2009 and her sleep study ended. Upon awakening, Gloria first complained to Atriano about the loud noises she heard throughout the night. Atriano then got his manager, Jeff Tanner, who also spoke with Gloria about the loud noises. Gloria left MHUC Sleep Lab feeling unrested and ill.

{¶4} During her car ride home, Gloria began experiencing vaginal discomfort. According to Gloria, her "vagina [was] bubbling fluids" and she had "feeling[s] that [were] postcoital [sic] in nature." (Gloria's Deposition Tr., p. 265-66). Once she arrived home, Gloria pulled down her pants and observed a "milky white discharge" and a pubic hair she believed belonged to someone else. (*Id*. at 265). She then swabbed her vagina with Q-tips, and inserted a tampon in an attempt to collect evidence. She also used scotch tape to collect the foreign pubic hair[1] and called her husband, Douglas Findley ("Douglas"). Gloria told Douglas that he needed to leave work immediately and come home.

{¶5} Upon Douglas arriving home, Gloria informed him that she believed she was drugged and raped during the sleep study despite having no recollection that a sexual assault occurred. (Gloria's Deposition Tr., p. 374). Gloria and Douglas (collectively "the Findleys") went to Dublin Methodist Hospital, where a

---

[1] Denise Arndt, a Sexual Assault Nurse Examiner (SANE) who examined Gloria, testified she did not collect Gloria's tampon, Q-tips, or scotch tape to include in the sexual assault examination, as it would have not been admissible evidence due to chain of custody. Arndt also testified she is unaware of whether Gloria kept these samples or handed them over to Detective Seeberg.

sexual assault examination was completed. After the examination, the Findleys talked to the Marysville Police Department. Detective Chad Seeberg was the lead detective on Gloria's case. Gloria told Detective Seeberg that she believed Atriano had been the person who raped her. After meeting with the Findleys, Detective Seeberg interviewed Atriano at the Marysville Police Department. Atriano adamantly denied all allegations of him knowing of, or participating in, a sexual assault against Gloria. He volunteered his DNA to Detective Seeberg, in order to exonerate himself.

{¶6} Sometime in February of 2009, Gloria had a "flashback" of the night of the alleged sexual assault. According to Gloria, she suddenly remembered seeing Atriano and another sleep technician, later identified as Steve Weate, in her room. Gloria stated that she awoke to an "intense pain in [her] left thigh." (*Id*. at 86). She testified that she saw Atriano standing to the side of her bed holding a syringe and then "los[t] consciousness rapidly." (*Id*.) Three months after the alleged sexual assault, Gloria gained another new "memory." This time, Gloria claimed to have a vivid memory of Atriano raping her.

{¶7} The results of the DNA testing showed that Atriano and Weate were not the source of DNA found inside Gloria. Instead, the DNA results showed that

the only DNA found inside of Gloria was that of her husband, Douglas.[2]  Further, the toxicology report came back negative for any drugs that are traditionally used in sexual assault cases.

{¶8} Gloria's sexual assault examination came back with mixed findings. There was "very slight" redness around Gloria's labia minora.  (Arndt Deposition Tr., p. 47).  Denise Arndt, the SANE nurse who performed Gloria's sexual assault examination, testified that redness can be caused not only by sexual assault but also by "tight underwear; riding a bike; riding a horse; having a little irritation or an allergic reaction to the elastic on your underwear; a tampon; [or] a pad." (*Id*. at 50).  Arndt also noticed a circular bruise around Gloria's cervix.  However, Arndt stated that the type of bruise she saw on Gloria was a bruise that would usually appear "two to three days after the injury[.]"  (*Id*. at 43).  Further, Arndt looked at Gloria's entire body for injection marks, but found none.  Arndt also examined Gloria's body with a "Wood's Lamp," to search for fluids and bruising, but found nothing.

{¶9} The Marysville Police Department also reviewed the six hour sleep study video of Gloria on the nights of January 7 and 8, 2009.  The sleep study video uses "Rembrandt" software and records a patient's physiologic data while

---

[2] Gloria and Douglas both testified, on numerous occasions, that they had not had sex together for ten days prior to the alleged sexual assault.  However, both Arndt and Tammy Lawhorn, another certified SANE nurse, testified that it is extremely unlikely for DNA to be inside someone for longer than 72-96 hours.

simultaneously recording a video of the patient sleeping. It is undisputed that the video did not show Gloria being drugged or raped on January 7 or 8, 2009.

{¶10} After the investigation into Gloria's allegations was completed, the Marysville Police Department decided not to pursue charges against Atriano or Weate. Thereafter, Gloria decided to file a civil suit against the people she believed were responsible for the alleged sexual assault. On March 4, 2011, Gloria filed a ten-count complaint against MHUC Sleep Lab, Memorial Hospital Auxiliary of Union County, Ohio, Inc., Atriano, Tanner, Dr. Mahmoud Qadoom, John Doe Employees 1-10, John Doe Physicians 1-5, John Doe Corporations 1-5, and John Does 1-25. Gloria alleged that the named defendants were responsible for (1) premises liability/negligence; (2) negligence per se; (3) negligent hiring and retention; (4) negligent and reckless supervision; (5) assault; (6) battery; (7) medical malpractice/hospital negligence; (8) respondent superior; (9) intentional infliction of emotional distress; and (10) punitive damages.[3]

{¶11} The Defendants-Appellees filed numerous answers and motions to dismiss. On March 21, 2011, Gloria filed an amended complaint to add two more defendants, John Harnden, D.O., and Steve Weate.

---

[3] According to the record, Gloria had filed a civil suit regarding this matter previously and voluntarily dismissed it.

{¶12} On July 8, 2011 the trial court ordered that count seven[4] of Gloria's amended complaint be dismissed as Gloria never attached an affidavit of merit to support her medical malpractice claim. As a result, Dr. Qadoom was dismissed as a party to the litigation. In addition, the trial court dismissed Weate and Harnden as parties to the action because Gloria filed the complaint against them after the two year statute of limitation period. The trial court also dismissed count two as it pertained to negligence per se; however, the portion of count two alleging a common law breach of the duty of care, was retained. (Docket No. 82, p. 1-2).

{¶13} On July 13, 2011, the Court of Common Pleas of Delaware County Domestic Relations Division issued a Civil Protection Order for Atriano against Gloria. Gloria had hired a private investigator to do "background checks" on Atriano and Weate, hoping to find evidence and discover prior bad acts she could use at trial. At the hearing, Gloria admitted she was having "homicidal" thoughts towards Atriano. (Docket No. 113, Exhibit B, p. 5).

{¶14} On August 15, 2011, Defendants-Appellees filed a counterclaim against Gloria alleging: (1) libel, slander, and defamation; (2) slander per se, libel per se, and defamation per se; (3) infliction of emotional distress; (4) frivolous conduct; (5) conspiracy to file frivolous lawsuit; and (6) punitive damages.

---

[4] In Gloria's complaint, she numbered her counts incorrectly. She has two separate "fourth causes of action." (Docket No. 1, p. 11-12). Therefore, her medical malpractice claim, which is labeled as her sixth cause of action, should really be her seventh cause of action. In the trial court's judgment entry, they also mistakenly refer to the medical malpractice claim as count six. (Docket No. 82, p. 1).

{¶15} On January 30, 2013, Defendants-Appellees filed a Motion for Summary Judgment. In its motion, Defendants-Appellees argued that Gloria's counsel had conceded that Gloria would not call any of the experts Gloria had listed on her expert witness list to testify at trial. Therefore, the only evidence Gloria could produce at trial of an alleged sexual assault were her "memories" of the night in question. Further, the Defendants-Appellees offered the affidavit of Dr. Catherine Frank who opined that Gloria's memory was unreliable and that Gloria suffered from a personality disorder. (Docket No. 163, Exhibit A).

{¶16} In their summary judgment motion, Defendants-Appellees also submitted the report indicating that there was no DNA evidence that linked Atriano to the alleged sexual assault, and the toxicology report, which indicated no presence of any drug which could have incapacitated Gloria. (Docket No. 163, Exhibits B, C).

{¶17} In addition, Defendants-Appellees argued that nothing on the sleep study video showed Gloria being sexually assaulted, a fact that Gloria admitted herself, and that there was no evidence of the interruption or alternation of the video. (*Id*., Exhibit E). Finally, Defendants-Appellees argued that Gloria's own expert witness, Tammy Lawhorn, admitted in her deposition that she could not say, more likely than not, that Gloria was sexually assaulted on the night of January 7, 2009.

{¶18} On February 15, 2013, Defendants-Appellees filed a Supplement to Motion for Summary Judgment, which contained an affidavit from Dr. Lawrence MacDonald, who reviewed Gloria's sleep study. Dr. MacDonald was a "board certified physician, specializing in pulmonology, critical care and sleep medicine." (Docket No. 176, p. 2). According to Dr. MacDonald's expert opinion, "the physiologic data indicates that at no time during the study was it interrupted, beyond the known disconnection for her requested trip to the bathroom, and at no time was Gloria Findley, drugged, sedated, placed in an insulin induced coma, or physically assaulted." (*Id.*).

{¶19} Gloria filed her Motion in Opposition to Summary Judgment on February 15, 2013.[5] Gloria argued that there were genuine issues of material fact because ether and insulin were not tested in her toxicology report. Further, she argued that Lawhorn's testimony showed that Gloria's injuries could be consistent with sexual assault. Gloria also offered the untimely[6] sworn affidavit[7] of Edward

---

[5] Two separate Motions in Opposition to Summary Judgment were filed on February 15, 2013. One Motion was a pro se motion Gloria wrote herself, and the other was written by her attorney. Gloria's attorney had filed a Motion to Withdraw on January 29, 2013, citing irreconcilable differences and the trial court granted her Motion to Withdraw, with the caveat that Gloria's attorney continue to represent her through the summary judgment proceedings. (Docket Nos. 162, 183).

[6] Gloria offered the sworn affidavit of Edward Moser *after* the deadline to disclose expert witnesses had passed. Gloria filed a Motion to Leave to Amend her Expert Witness List, but the trial court never ruled on this motion. However, Gloria attached the affidavit to her Motion in Opposition for Summary Judgment. As such, we will consider the affidavit since it is a part of the record.

[7] In the Appellees' brief, they argue that Moser's affidavit was not sworn and therefore, improper to consider. We note that Gloria's pro se Motion in Opposition to Summary Judgment does not contain the first page of Moser's affidavit, which demonstrated that it was properly sworn to. However, Gloria's second Motion in Opposition to Summary Judgment, which her attorney filed on her behalf, contained the first page of the affidavit. Therefore, we will consider Moser's affidavit as properly sworn to and will consider it on appeal.

Moser, which she believed created a genuine issue of material fact as to the validity of the sleep study data and video.

{¶20} In addition, Gloria relied heavily on a subsequent bad act of Atriano to show that there was a genuine issue of material fact. Gloria had discovered that after her alleged assault, Atriano was arrested for another, unrelated charge. Gloria believed that this created a genuine issue of material fact because it demonstrated that Atriano has a propensity to act immorally.

{¶21} On February 25, 2013 the trial court issued a judgment entry and granted summary judgment in favor of the Defendants-Appellees. The trial court gave the following explanation for its decision:

> **Construing the evidence most strongly in [Gloria's] favor, the Court finds that there is no factual basis for her claim. The evidence favorable to her consists solely of her unsupported testimony concerning her feelings and memories which is contradicted by all of the other evidence in the case. While the Court reviewed the deposition of Mr. Kochan concerning the study, his testimony concerns only the value of the study and not any actions of Atriano during the study.**

> **On the other hand, there is the unrebutted [sic] affidavit of a psychiatrist concerning the validity of [Gloria's] recollections and the physical evidence, all of which negates her claim. The DNA evidence demonstrates that her only sexual activity within the previous 72 hours had been with her husband. The blood test revealed no drugs consistent with the feelings she expressed. The SANE nurse did not observe the physical trauma [Gloria] later reported, although [the SANE nurse] examined [Gloria]. The opinion evidence concerning sexual assault was not given to the requisite degree of medical certainty. The Wood[']s lamp**

**revealed no stains. Finally, the videotape and computer data revealed nothing consistent with sexual assault.**

(Docket No. 184, p. 2).

**{¶22}** On March 12, 2013, Defendants-Appellees dismissed all of their counterclaims against Gloria. A final judgment entry was then filed September 25, 2013, terminating the matter in its entirety. Gloria then timely appealed this judgment, presenting the following assignments of error for our review.

#### ASSIGNMENT OF ERROR 1
**THE TRIAL COURT ERRED IN GRANTING DEFENDANTS['] MOTION FOR SUMMARY JUDGMENT PURSUANT TO CIV.R. 56(C) WHEN THERE WERE TRIABLE ISSUES OF FACT THAT APPELLANT WAS ASSAULTED.**

#### ASSIGNMENT OF ERROR 2
**THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT FOR BATTERY WHEN EVIDENCE WAS PRESENTED CREATING A GENUINE ISSUE THAT A BATTERY OCCURRED AND FORCEFUL, SEXUAL ACTIONS WERE PERFORMED ON PLAINTIFF WHILE SHE WAS A PATIENT.**

#### ASSIGNMENT OF ERROR 3
**THE TRIAL COURT EERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT ON THE ISSUE OF A CIVIL ASSAULT BY DEFENDANTS AGAINST PLAINTIFF WHEN EVIDENCE WAS PRESENTED CREATING A GENUINE ISSUE THAT AN ASSAULT WAS PERPETRATED UPON PLAINTIFF.**

#### ASSIGNMENT OF ERROR 4
**THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT ON THE ISSUE OF NEGLIGENCE BY DEFENDANTS AGAINST PLAINTIFF**

**WHEN EVIDENCE WAS PRESENTED CREATING A GENUINE ISSUE THAT DEFENDANTS WERE NEGLIGENT AND THEIR NEGLIGENCE IN THE SCOPE [OF] THEIR EMPLOYMENT BY MEMORIAL HOSPITAL OF UNION COUNTY PROXIMATELY AND DIRECTLY CAUSED PLAINTIFF'S INJURIES.**

**ASSIGNMENT OF ERROR 5**
**THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT ON THE ISSUES OF A NEGLIGENT HIRING, SUPERVISION, AND TRAINING OF ITS EMPLOYEES WHEN THE UNDERLYING TORTS OF BATTERY, ASSAULT, AND NEGLIGENCE BY THE EMPLOYEES PROXIMATELY CAUSE[D] PLAINTIFF'S INJURIES, BY THE REQUISITE PROOF REQUIRED OF APPELLANT TO DEFEAT SUMMARY JUDGMENT AND APPELLEE DID NOT PROVIDE EVIDENCE TO CONTEST THIS ISSUE.**

**ASSIGNMENT OF ERROR 6**
**THE TRIAL COURT ERRED AS A MATTER [OF LAW] IN GRANTING SUMMARY JUDGMENT TO DEFENDANTS ON THE ISSUE OF PUNITIVE DAMAGES WHEN THE UNDERLYING TORTS OF BATTERY AND ASSAULT, AND NEGLIGENCE BY DEFENDANT EMPLOYEES PROXIMATELY CAUSED PLAINTIFF'S INJURIES, BY THE REQUISITE PROOF REQUIRED OF APPELLANT TO DEFEAT SUMMARY JUDGMENT AND THE REQUIREMENTS FOR PUNITIVE DAMAGES, BOTH DIRECTLY AND VICARIOUSLY, HAVE BEEN MET.**

**ASSIGNMENT OF ERROR 7**
**THE TRIAL COURT ERRED IN ALLOWING DEFENDANTS' COUNTERCLAIM TO STAND; IT WAS TIME-BARRED.**

**ASSIGNMENT OF ERROR 8**
**THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION TO DISMISS; THE WITHHOLDING OF MEDICAL RECORDS WAS SHOWN, GOOD CAUSE WAS JUSTIFIED**

**TO AVOID DISPOSITION AND TO ALLOW TIME FOR AFFIDAVIT OF MERIT.**

**{¶23}** As the first six assignments of error all relate to a discussion of the evidence and the trial court's decision to grant summary judgment to the Defendants-Appellees, we elect to address those assignments of error together.

*First, Second, Third, Fourth, Fifth,*
*and Sixth Assignments of Error*

**{¶24}** In Gloria's first six assignments of error, she argues that the trial court erred by granting the Defendants-Appellees' motion for summary judgment and dismissing Gloria's complaint. Specifically, she asserts that there was evidence in the record that she was raped that the trial court failed to consider, leading to her various tort claims. Moreover, Gloria contends that the record illustrated that one of the sleep videos was "missing" five minutes of video, and that there were "gaps" in her medical record. Furthermore, Gloria argues that while none of the toxicology reports found any drugs that were used to incapacitate her, she could have been drugged with insulin.

**{¶25}** An appellate court reviews a summary judgment order *de novo*. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist. 1999). Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton*

-13-

*Heidelberg Distrib. Co*., 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn*., 69 Ohio St.3d 217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id*. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

{¶26} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. *Id*. at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. *Id*.; Civ.R. 56(E).

-14-

{¶27} In this case the Defendants-Appellees moved for summary judgment, submitting evidence that the toxicology reports did not show Gloria had been given an incapacitating drug, that the video of the sleep study did not show a rape occurring, that the video of the sleep study had not been stopped, paused, or altered, that the only DNA found on Gloria during the SANE evaluation was Gloria's husband's, and that the SANE nurses could not say more likely than not that a sexual assault occurred.

{¶28} In arguing against the Defendants-Appellees' evidence, Gloria contends that the trial court did not properly consider her own testimony from her depositions, her sworn affidavit, and her statements that she gave to the police when the trial court granted summary judgment.

{¶29} " 'Generally, a party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact. Otherwise, a party could avoid summary judgment under all circumstances solely by simply submitting such a self-serving affidavit containing nothing more than bare contradictions of the evidence offered by the moving party.' " *Cornell v. Rudolph Foods, Inc.,* 3d Dist. Allen No 1-10-89, 2011-Ohio-4322, ¶ 12 quoting *TJX Cos., Inc. v. Hall*, 8th Dist. Cuyahoga No. 91415, 91421, 2009-Ohio-3372, ¶ 30; *see also Bell v. Beightler*, 10th Dist. Franklin No. 02AP-569, 2003-Ohio-88, ¶

33. We find that Gloria's affidavit and deposition testimony merely reiterate her complaint and do not demonstrate any material fact.

{¶30} In her deposition, Gloria admits that the DNA evidence did not implicate either Atriano or Weate in a sexual assault against her. She also admitted that the toxicology reports came back negative for any incapacitating drugs. However, Gloria believed that Atriano used a drug that was not tested for in her original toxicology report; specifically, ether or insulin. Despite this belief, Gloria failed to support this allegation with any evidence. She had the opportunity to test her blood for insulin and/or ether, but failed to do so before the summary judgment proceedings.[8]

{¶31} Gloria also admitted that the sleep study video does not show that a sexual assault took place. It was Gloria's contention that the video was somehow altered. Again, Gloria did not provide any evidence that explained how the video of the sleep study was altered or provide expert testimony whose opinion was that the video was actually altered. At best, Gloria provided the testimony of Dr. Edward Moser, whose observations did not make any explicit or concrete conclusions that Gloria was sexually assaulted or that the video was edited. Dr. Moser is a registered respiratory therapist, but does not seem to have any experience with sleep disorders or experience with the technical machinery used to

---

[8] In fact, Gloria apparently did have multiple tests done on her own prior to summary judgment proceedings, but she did not provide any evidence from the results of those tests to support her claims.

monitor sleep studies. After reviewing the study, Moser made the following observations:

**1.    Study appears to be a blended study with another patient.**

**2.    The lack of progress notes by the technician present during the study would warrant this study to be invalid by most physicians.**

**3.    There seems to be no video of the actual study[.]**

**4.    The Oxygen Saturation changed only 1-3 percentage pts. Usually a patients [sic] 02 Saturation changes more during different periods of the sleep cycle.**

**5.    There is no change in heart rates digital number, even when the EKG demonstrates artifact.  Summary sheet shows a short period of tachycardia and bradycardia, but the study doesn't show any change in HR.**

**6.    Between 4:15:26 and 4:22:56 there is right leg movement but not left leg movement.**

(Doc. No. 177).

**{¶32}** Moser did not provide any explanation on how these observations proved, or in any manner indicated, that Gloria was sexually assaulted. Dr. Moser's observations similarly did not explain how the video was edited or altered as Gloria contends. Moreover, nowhere in Moser's report did it say that it was his opinion that Gloria was sexually assaulted or that the sleep study video was edited *because of* these observations. In sum, Gloria's expert testimony does not create an issue of fact as it does not offer any proof toward whether a sexual assault

occurred, thus offering no proof of the corresponding civil torts Gloria sued Defendants-Appellees for.

{¶33} Gloria also argues that the trial court failed to construe the testimony of Tammy Lawhorn in Gloria's favor. Lawhorn is a registered SANE nurse and teaches seminars on sexual assault. Lawhorn reviewed all the contents of Gloria's sexual assault examination and it was her opinion that the findings in Gloria's file "can be consistent with sexual assault. However, they can also be due to a medical condition." (Lawhorn's Deposition Tr., p. 37). When asked what medical condition could produce redness and bruising, Lawhorn replied, "[t]hey could be from a sexually transmitted disease, endometriosis, [and] cancers." (*Id.*)

{¶34} Further, in her deposition Lawhorn admitted that she could not say, "more probable than not, that the redness noted on [Gloria's] right and left labia minora were the result of being sexually assaulted[.]" (*Id.* at 48-49). Lawhorn also admitted that she could not say, "more likely than not, that the bruising [noted on Gloria's cervix] came from sexual assault." (*Id.* at 52). In addition, Lawhorn stated that "a whitish-yellow discharge coming from the cervical os" is not consistent with a sexual assault. (*Id.* at 53). Lawhorn then had the following exchange with defense counsel:

> **Q: [C]an you say, more likely than not, that [Gloria] wasn't sexually assaulted in the Sleep Lab just prior to going to the ER, as she claims?**

**A:  That's hard to answer because there's always those what ifs.  Can I say yes, semi-colon?**

**Q:  Well, what are you struggling with?**

**A:  If, for instance, a male would have a condom on covering the penis inserting into the vagina that can take away the DNA.**

**Q:  All of it?**

**A:  Possible, but *not likely*.**

**\* \* \***

**Q:  We're dealing with more likely, you know 50 percent or more. That's what we're dealing with.**

**\* \* \***

**Q: Assuming that the DNA testing showed the DNA of [Douglas] \* \* \***

**\* \* \* *you cannot say, more likely than not, that [Gloria] was sexually assaulted in the Sleep Lab earlier that morning?***

**A:  *Correct.***

(Emphasis added.)  (*Id*. at 64-65).

{¶35} Gloria contends that the redness and bruise found on her cervix was caused by her alleged sexual assault.  However, Gloria's own expert witness testified in her deposition that she was unable to say that Gloria's injuries were more likely than not caused by a sexual assault rather than an unrelated medical condition.  "The admissibility of expert testimony that an event is the proximate cause is contingent upon the expression of an opinion by the expert with respect to

-19-

the causative event in terms of probability." *Stinson v. England*, 69 Ohio St.3d 451 (1994) paragraph one of the syllabus. In order to show that an event is probable, the expert must testify that there is a greater than 50 percent chance that it produced the occurrence at issue. *Id.* Therefore, an expert opinion concerning a causative event must be expressed in terms of probability. *Id.* Since Lawhorn could not say that a sexual assault was probable in Gloria's situation, her expert testimony would not be admissible at trial, or at the very least, would not warrant the reversal of the trial court's grant of summary judgment.[9]

{¶36} Finally, Gloria's own allegations that she was sexually assaulted the night of January 7, 2009, and her "memories" regarding those allegations, were called into question by Defendants-Appellees' expert, who opined that Gloria suffered from a personality disorder.

{¶37} Therefore, looking at the record in its entirety, Gloria has not provided evidence to rebut the evidence submitted by Defendants-Appellees. Under these circumstances, we cannot find that the trial court erred in granting summary judgment in the Defendants-Appellees' favor.

{¶38} Accordingly, Gloria's first, second, third, fourth, fifth, and sixth assignments of error are overruled.

---

[9] We would also reiterate that Denise Arndt, the SANE nurse who performed Gloria's sexual assault examination, testified that redness found in Gloria's examination could be caused not only by sexual assault but also by "tight underwear; riding a bike; riding a horse; having a little irritation or an allergic reaction to the elastic on your underwear; a tampon; [or] a pad." In addition, Arndt checked Gloria for possible injection sites and found nothing.

*Seventh Assignment of Error*

**{¶39}** In Gloria's seventh assignment of error, she contends that the trial court erred in allowing the appellees' counterclaim as it was "time-barred." However, as the appellees have dismissed their counterclaim, this assignment of error is rendered moot, and we decline to further address it.[10]

*Eighth Assignment of Error*

**{¶40}** In Gloria's eighth assignment of error, she argues that the trial court erred in granting Dr. Qadoom's 12(B)(6) motion to dismiss for failing to attach an affidavit of merit to her complaint regarding her medical claims against Dr. Qadoom.

**{¶41}** Civil Rule 10(D)(2), which governs this issue, reads as follows.

**(2)** *Affidavit of merit; medical liability claim.*

**(a) Except as provided in division (D)(2)(b) of this rule, a complaint that contains a medical claim, dental claim, optometric claim, or chiropractic claim, as defined in section 2305.113 of the Revised Code, shall include one or more affidavits of merit relative to each defendant named in the complaint for whom expert testimony is necessary to establish liability. Affidavits of merit shall be provided by an expert witness pursuant to Rules 601(D) and 702 of the Ohio Rules of Evidence. Affidavits of merit shall include all of the following:**

---

[10] At oral argument Gloria stated that Defendants-Appellees had refiled their claims against her. Nothing in the record before this court indicates that this case has been reopened or that Defendants-Appellees' claims have been revived. We make no finding as to the validity of Gloria's argument as it pertains to any re-filed case, as it would constitute an advisory opinion.

**(i) A statement that the affiant has reviewed all medical records reasonably available to the plaintiff concerning the allegations contained in the complaint;**

**(ii) A statement that the affiant is familiar with the applicable standard of care;**

**(iii) The opinion of the affiant that the standard of care was breached by one or more of the defendants to the action and that the breach caused injury to the plaintiff.**

**(b) The plaintiff may file a motion to extend the period of time to file an affidavit of merit. The motion shall be filed by the plaintiff with the complaint. For good cause shown and in accordance with division (c) of this rule, the court shall grant the plaintiff a reasonable period of time to file an affidavit of merit, not to exceed ninety days, except the time may be extended beyond ninety days if the court determines that a defendant or non-party has failed to cooperate with discovery or that other circumstances warrant extension.**

**{¶42}** The failure to file a Civ.R. 10(D)(2) affidavit is contested by way of a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Fletcher v. Univ. Hosps. of Cleveland,* 120 Ohio St.3d 167, 2008–Ohio–5379, ¶ 13. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey County Board of Commissioners,* 65 Ohio St.3d 545 (1992). Our standard of review on a Civ.R. 12(B)(6) motion to dismiss is *de novo*. *Greeley v. Miami Valley Maintenance Contrs., Inc.,* 49 Ohio St.3d 228 (1990).

**{¶43}** In this case it is not disputed that Gloria failed to provide an affidavit of merit with her complaint as it relates to the medical claims. In addition, Gloria

did not file a motion for an extension of time to file that affidavit with her complaint. We would note that this is the second time Gloria has filed this action, and she still failed to attach the required affidavit to proceed on this claim. As the failure to attach the affidavit is fatal to the claim, we cannot find that the trial court erred in granting Dr. Qadoom's motion to dismiss. *See Fletcher v. Univ. Hosps. of Cleveland,* 120 Ohio St.3d 167, 2008–Ohio–5379, ¶ 9–15. Accordingly, Gloria's eighth assignment of error is overruled.

{¶44} For the foregoing reasons Gloria's first, second, third, fourth, fifth, sixth, and eighth assignments of error are overruled, and her seventh assignment of error is moot. Therefore the judgment of the Union County Common Pleas Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ROGERS, J., concur.**

**/jlr**