[Cite as *Stedke v. Hume Contracting, L.L.C.*, 2025-Ohio-323.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

DAVEN E. STEDKE, ET AL.,

    PLAINTIFFS-APPELLANTS,

    CASE NO. 1-24-07

    v.

HUME CONTRACTING, LLC, ET AL.,    O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2021 0339

**Judgment Affirmed**

**Date of Decision:  February 3, 2025**

**APPEARANCES:**

    *Zachary D. Maisch* and *Andrea M. Bayer* for Appellants

    *Neil Fairweather* and *Aaron L. Bensinger* for Appellees

**ZIMMERMAN, J.**

{¶1} Plaintiffs-appellants, Daven E. Stedke ("Stedke") and Hume Supply, Inc. ("Hume Supply") (collectively, "plaintiffs"), appeal the December 20, 2023 judgment of the Allen County Court of Common Pleas granting (partial) summary judgment in favor of defendants-appellees, Hume Contracting, LLC ("Hume Contracting") and Ryan D. Smith ("Smith") (collectively, "defendants"), and dismissing their breach-of-contract claim. For the reasons that follow, we affirm.

{¶2} This case stems from a dispute over Stedke's employment with Hume Contracting following the sale of a majority of Hume Supply's assets to Hume Contracting. Hume Contracting is owned by Smith, while Stedke retained ownership of Hume Supply. Following the sale of Hume Supply's assets to Hume Contracting, Stedke executed an employment agreement with Hume Contracting.

{¶3} However, on May 23, 2021, Smith provided Stedke with a letter of termination in which Smith indicated that Stedke's employment was being terminated for "direct breaches of [his] obligations under [his] Employment Agreement." (Doc. No. 74, Ex. 2). Specifically, the letter states that Stedke "continue[d] to make negative statements about the Company to third parties," which "violates [Stedke's] obligation not to make disparaging comments about the Company." (*Id.*). In addition, the letter describes that Stedke "entered the Company property and argued with Company employees about [his] intent to remove certain

equipment from the property" and that Stedke later returned to the property "and aggressively berated and threatened these same employees for reporting the dispute." (*Id.*).

{¶4} On October 28, 2021, the plaintiffs filed a complaint for replevin and breach of contract in the trial court. Hume Contracting filed its answer on December 15, 2021 along with counterclaims for breach of contract, breach of the goodwill agreement, recoupment, tortious interference with business relations, and replevin. The plaintiffs filed their answer to Hume Contracting's counterclaims on December 27, 2021.

{¶5} Smith filed a motion to dismiss the plaintiffs' complaint under Civ.R. 12(B)(6) on December 15, 2021. The plaintiffs filed a memorandum in opposition to Smith's motion to dismiss on December 27, 2021. On January 3, 2022, Smith filed his reply to the plaintiffs' memorandum in opposition to his motion to dismiss. On January 4, 2022, the trial court denied Smith's motion as to the plaintiffs' breach-of-contract claim, granted Smith's motion as to the plaintiffs' replevin claim, and dismissed the plaintiffs' replevin claim against Smith.

{¶6} On March 28, 2022, because Smith did not file an answer to the plaintiffs' complaint, the plaintiffs' filed a motion in the trial court requesting default judgment against Smith. Smith filed a memorandum in opposition to the plaintiffs' motion for default judgment on April 8, 2022. That same day, Smith filed a motion for leave to file an answer. On April 20, 2022, the trial court denied the

plaintiffs' motion for default judgment and granted Smith's motion for leave to file an answer. Smith filed his answer that same day.

{¶7} After being granted leave by the trial court, Stedke filed a supplemental complaint on August 12, 2022, alleging a claim for breach of a promissory note. On October 21, 2022, because the defendants did not file an answer to Stedke's supplemental complaint, Stedke filed a motion in the trial court requesting default judgment against the defendants. That same day, the trial court granted Stedke's motion for default judgment and awarded him a judgment in the amount of $59,450.14 "with interest at six percent (6%) per annum from May 1, 2022." (Doc. No. 38).

{¶8} Notwithstanding the trial court's judgment in favor of Stedke as to his supplemental complaint, the defendants filed an answer to Stedke's supplemental complaint on October 24, 2022. Thereafter, the defendants filed a motion for relief from judgment under Civ.R. 60(B) on November 4, 2022. Stedke filed a memorandum in opposition to the defendants' motion for relief from judgment on November 9, 2022. The trial court granted the defendants' motion for relief from judgment on November 29, 2022.

{¶9} After being granted leave by the trial court, Smith filed an amended answer on July 26, 2023.

{¶10} On November 17, 2023, after being granted leave by the trial court, the defendants filed a motion for (partial) summary judgment. In their motion, the

defendants requested that the trial court grant summary judgment in their favor as to the plaintiffs' claim for breach of contract. The plaintiffs filed a memorandum in opposition to the defendants' motion for summary judgment on December 14, 2023. On December 18, 2023, the defendants filed their reply to the plaintiffs' memorandum in opposition to their motion for summary judgment. On December 20, 2023, the trial court granted the defendants' motion for summary judgment and dismissed the plaintiffs' breach-of-contract claim.

{¶11} Even though the plaintiffs' replevin and breach-of-a-promissory-note claims and the defendants' counterclaims remain pending, the trial court certified that there is no just reason for delay under Civ.R. 54(B). Thus, on January 18, 2024, the plaintiffs filed a notice of appeal. They raise one assignment of error.

### Assignment of Error

**The Trial Court Erred In Granting Partial Summary Judgment And Dismissing Appellant's Claim For Breach Of Contract.**

{¶12} In their sole assignment of error, the plaintiffs argue that the trial court erred by granting summary judgment in favor of the defendants as to their breach-of-contract claim. In particular, the plaintiffs argue that genuine issues of material fact remain as to whether Stedke was wrongfully terminated from his employment with Hume Contracting.

*Standard of Review*

**{¶13}** We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 2013-Ohio-2149, ¶ 25 (3d Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

**{¶14}** "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 2011-Ohio-4467, ¶ 13 (3d Dist.). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.* "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*

*Analysis*

**{¶15}** In this case, the plaintiffs argue that the trial court erred by granting summary judgment in favor of the defendants after concluding that there is no

genuine issue of material fact that the defendants did not breach the employment agreement by terminating Stedke's employment with Hume Contracting. That is, the plaintiffs argue that the trial court erred by concluding that no genuine issues of material fact exist regarding whether Stedke's employment was terminated for just cause.

{¶16} "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 41.

{¶17} The parties agree that Stedke's employment agreement "was for a definite term of three years" and that it "contained no provisions regarding termination and was silent as to a definition of 'just cause.'" (Appellee's Brief at 3); (Appellant's Brief at 4). Indeed, Stedke's employment agreement describes the term of his employment as "a period of three (3) years commencing" on May 1, 2019. (Doc. No. 1, Ex. 2). Yet, contrary to the parties' suggestion that the agreement does not contain any "provisions regarding termination," the agreement contains a non-disparagement clause, which rudimentarily discusses the issue of termination. (Appellant's Brief at 5). That clause provides, "During Stedke's employment and after *termination of that employment, for any or no reason*, Stedke shall not make to any person or entity, by any mode of communication, any negative or disparaging comments with respect to the Company, its practices and procedures,

or its products and services." (Emphasis added.) (Doc. No. 1, Ex. 2). However, that clause notwithstanding, the employment agreement does not define "just cause" for termination.

{¶18} "'A court's primary objective in the construction of any written agreement is to ascertain and give effect to the intent of the parties by examining the language that they chose to employ.'" *United Gulf Marine, LLC v. Continental Refining Co., LLC*, 2019-Ohio-666, ¶ 20 (3d Dist.), quoting *O.E. Meyer Co. v. BOC Group, Inc.*, 2000 WL 234549, *5 (6th Dist. Mar. 3, 2000). "First, a court must determine whether the disputed language is plain and unambiguous." *Id.* "'The language is unambiguous if, from reading only the four corners of the instrument, the language is clear, definite, and subject to only one interpretation.'" *Id.*, quoting *Beverly v. Parilla*, 2006-Ohio-1286, ¶ 24 (7th Dist.). "Contract language is ambiguous 'if it is unclear, indefinite, and reasonably subject to dual interpretations.'" *Mulchin v. ZZZ Anesthesia, Inc.*, 2006-Ohio-5773, ¶ 36 (6th Dist.), quoting *Beverly* at ¶ 24. *See also Bay Coast Properties, Inc. v. Natl. City Bank*, 2006-Ohio-2348, ¶ 15 (6th Dist.) (noting that "[t]he test for determining whether contract terms are ambiguous" is: "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument"), quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

**{¶19}** "'If it is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties' and '[t]he interpretation of a written agreement is . . . a matter of law for the court,' which an appellate court reviews de novo." *United Gulf Marine* at ¶ 21, quoting *O.E. Meyer Co.* at *5. As we previously stated, "[d]e novo review requires us to conduct an independent review of the record without deference to the trial court's decision." *Matrix Technologies, Inc. v. Kuss Corp.*, 2008-Ohio-1301, ¶ 11 (6th Dist.). "When a court finds an ambiguity in the contract language, the intent of the parties becomes a question of fact; in order to ascertain such intent, the trier of fact may rely on extrinsic evidence." *Mulchin* at ¶ 36. *See also Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984) ("However, if a term cannot be determined from the four corners of a contract, factual determination[s] of intent or reasonableness may be necessary to supply the missing term.").

**{¶20}** "The parol evidence rule prohibits a party from contradicting or supplementing a written, fully-integrated contract with extrinsic evidence of prior or contemporaneous agreements, whether oral or written." *Bottomline Ink, Corp. v. Huntington Bancshares, Inc.*, 2008-Ohio-2987, ¶ 11 (6th Dist.). "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special

-9-

meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." *Huff v. FirstEnergy Corp.*, 2011-Ohio-5083, ¶ 12.

**{¶21}** Because the parties' agreement does not define "just cause," "we look at common sources to define its ordinary meaning." *In re Klingenberg*, 1993 WL 48746, *2 (3d Dist. Feb. 23, 1993). *See Ma v. Cincinnati Children's Hosp. Med. Ctr.*, 2023-Ohio-1727, ¶ 18 (1st Dist.) (recognizing that "ambiguity can arise when "'a material phrase in the provision is undefined'""), quoting *Ma v. Cincinnati Children's Hosp. Med. Ctr.*, 2020-Ohio-1471, ¶ 17 (1st Dist.), quoting *Career & Technical Assn. v. Auburn Vocational School Dist. Bd. of Edn.*, 2014-Ohio-1572, ¶ 18 (11th Dist.).

**{¶22}** "Unlike an at-will employment relationship, an employer who is a party to an employment contract of definite term may properly discharge the employee only for 'just cause.'" *Zimmerman v. Eagle Mtge. Corp.*, 110 Ohio App.3d 762, 773 (2d Dist. 1996). *See also Williams v. Case W. Res. Univ.*, 2006-Ohio-6190, ¶ 25 (8th Dist.) (noting that "where the parties have entered into a written employment contract with a stated term of duration, the employee may not be terminated at will, but may be terminated only for 'just cause'"). "Conduct which gives rise to 'just cause' for termination is that kind of conduct which an ordinarily intelligent person would regard as a justifiable reason for discharging an employee." *Piqua Mem. Med. Ctr. v. Butsch*, 1996 WL 185342, *2 (2d Dist. Apr. 19, 1996).

**{¶23}** "To justify the discharge of an employee for just cause, 'it is sufficient for the employer to show that the employee was guilty of a default in duty whose natural tendency was to injure [its] business, and actual injury thereto need not be shown.'" *McElroy v. Snider Co.*, 2000 WL 868469, *3 (8th Dist. June 29, 2000), quoting *Beckman v. Garrett*, 66 Ohio St. 136 (1902), syllabus. "Negligence, neglect of duty, misconduct, injury to the employer's business, dishonesty, or disloyalty are all grounds for termination for just cause regardless of the existence of an employment contract." *McCormac v. Ackerman Corp.*, 1987 WL 11972, *7 (8th Dist. June 4, 1987). *See also Dayton Rubber Mfg. Co. v. Brown*, 116 Ohio St. 373, 374 (1927) ("[N]eglect of duty, insubordination, and disloyalty are sufficient grounds for terminating employment.").

**{¶24}** In this case, the defendants contend that they are entitled to a judgment as a matter of law because there is no genuine issue of material fact that Stedke's employment was terminated for just cause. Specifically, in his termination letter, Smith asserted that Stedke made "negative statements about the Company to third parties" and instigated a verbal altercation with other employees of Hume Contracting. (Doc. No. 74, Ex. 2). In other words, Smith alleged that his just cause for terminating Stedke's employment was that Stedke engaged in conduct that had a propensity to injure Hume Contracting. That is, Stedke engaged in misconduct, injury to the employer's business, and disloyalty.

-11-

{¶25} In support of the defendants' assertion that Stedke's employment was terminated for just cause, the defendants not only submitted the affidavit of Smith, but also submitted the affidavits of Craig Eisert ("Eisert"), the employee that Stedke threatened, and Daniel Schoder ("Schoder"), an employee who witnessed the altercation between Stedke and Eisert.

{¶26} Chiefly, in his affidavit, Eisert averred that he observed Stedke on May 14, 2021 "taking materials and equipment that did not belong to him." (Doc. No. 72, Ex. B). Eisert stated that he knew that those materials and equipment did not belong to Stedke because he "had just purchased some of the materials for the business and [he] knew they were company property." (*Id.*). Consequently, Eisert reported his observation to Smith. According to Eisert, Stedke, who was apparently "upset at [Eisert] for reporting the situation to management," returned to the business on May 18, 2021 and "threatened to 'take [Eisert] out to the grass.'" (*Id.*). Eisert averred that Stedke "wanted to attack [him] physically" and was "unsure whether he was going to physically attack [him] right there inside the shop since [he] refused to go outside." (*Id.*). Further, Eisert averred that Stedke "threatened to 'ruin [him] financially.'" (*Id.*).

{¶27} Likewise, Smith averred that Eisert reported Stedke's conduct to him. According to Smith, Eisert told him "that he felt Daven Stedke had verbally abused him and [he] was in fear for his safety as he felt there was an immediate threat to his safety." (Doc. No. 72, Ex. A). Smith further averred that he "conducted an

investigation into the facts and circumstances" of the incidents and that he "spoke with those who had observed the interaction between" Stedke and Eisert. (*Id.*). Relevantly, Schoder averred that he "heard a highly hostile conversation between Daven Stedke and Craig Eisert, which based on [his] observations was an inappropriate way to speak to another . . . employee." (Doc. No. 72, Ex. C). In particular, Schoder averred that "[f]rom what he heard[, Stedke] was hostile towards Craig Eisert and Craig Eisert was attempting to deflate the situation." (*Id.*). According to Schoder, Eisert "appeared visibly upset" following the altercation. (*Id.*).

{¶28} Even though the defendants further alleged that Stedke's employment was terminated for just cause (or as a result of a breach of his employment agreement) based on disparaging statements that he allegedly made about Hume Contracting, the defendants did not provide any evidence supporting that allegation.

{¶29} In response to the defendants' motion for summary judgment, the plaintiffs' provided only the self-serving affidavit of Stedke without any corroborating materials. Specifically, in that affidavit, Stedke averred that he did not "threaten Craig Eisert or any other employee of Hume Contracting, LLC." (Doc. No. 75). According to Stedke, "[t]he story outlined by Craig Eisert and Daniel Schoder in their affidavits is a complete fabrication and an obvious attempt to gain favor in the eyes of their employer." (*Id.*).

**{¶30}** "'Generally, a party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact.'" *Cornell v. Rudolph Foods, Inc.*, 2011-Ohio-4322, ¶ 12 (3d Dist.), quoting *TJX Cos., Inc. v. Hall*, 2009-Ohio-3372, ¶ 30 (8th Dist.). "'Otherwise, a party could avoid summary judgment under all circumstances solely by simply submitting such a self-serving affidavit containing nothing more than bare contradictions of the evidence offered by the moving party.'" *Id.*, quoting *TJX Cos.* at ¶ 30. However, "a party's affidavit is competent to create a genuine issue of material fact if the relevant factual assertions are made on personal knowledge." *Patel v. Krisjal, L.L.C.*, 2013-Ohio-1202, ¶ 35 (10th Dist.).

**{¶31}** In this case, the plaintiffs failed to corroborate Stedke's self-serving affidavit with any evidence and Stedke's affidavit does not include any specific facts (made on personal knowledge) which would create a triable issue. *See Wischt v. Heirs of Mourer*, 2017-Ohio-8236, ¶ 29 (5th Dist.) (concluding that the appellant did not corroborate "affidavit with any evidence or include[] in her affidavit any specific facts which establishes the existence of an issue of material fact. Rather, her affidavit contains bare contradictions of the evidence offered by appellees"). *See also Findley v. Union Cty. Mem. Hosp.*, 2014-Ohio-3547, ¶ 29 (3d Dist.) (concluding "that Gloria's affidavit and deposition testimony merely reiterate her complaint and do not demonstrate any material fact"). Instead, Stedke's affidavit

reflects bare contradictions of the evidence offered by the plaintiffs. *See JPMorgan Chase Bank, NA v. Carroll*, 2013-Ohio-5273, ¶ 26 (12th Dist.) ("Appellants' bald assertions that they 'do not know' Brown, that JPMorgan is 'a complete stranger' to them, and that they 'deny owing' JPMorgan 'anything' are insufficient to overcome the evidence presented by JPMorgan. The fact that such assertions are couched in an affidavit by Glenn is also insufficient to overcome JPMorgan's evidence.").

**{¶32}** Nevertheless, in contradiction to this conclusion, the dissenting opinion contends that Stedke's affidavit is sufficient to combat the defendants' motion for summary judgment. In support of this position, the dissenting opinion advocates for this court to provide clarifying precedent regarding the admissibility and weight afforded to self-serving statements at the summary judgment stage.

**{¶33}** Specifically, the dissenting opinion advocates that we follow the Tenth District Court of Appeals' holding in *Kiser v. United Dairy Farmers* that "'self-serving' testimonial evidence that conforms to the requirements of Civ.R. 56(C) must be considered by the trial court and treated as any other evidence in the record at summary judgment." 2023-Ohio-2136, ¶ 24 (10th Dist.). There is no justification for departing from our established precedent or for creating a new legal rule. Indeed, our holding in this case does *not* diverge from the standing precedent of this court (or from our sister appellate districts for that matter) pertaining to self-serving affidavits containing bare contradictions. Decisively, as we previously

acknowledged (also relying on a case from the Tenth District), a self-serving affidavit *can* be used to defeat an opponent's motion for summary judgment if it contains factual assertions that are made on personal knowledge. *Patel*, 2013-Ohio-1202, at ¶ 35 (10th Dist.). This is the Civ.R. 56 standard. *See Kiser* at ¶ 23. Importantly, a close review of our sister appellate district's decision in *Kiser* reveals that the presence of specific factual assertions based on personal knowledge is the hallmark of its analysis. Accordingly, the absence of such assertions in Stedke's affidavit is dispositive of the issue presented here. As a result, by overlooking the correct standard, the dissenting opinion creates a flawed deviation from the established jurisprudence of this court (as well as our sister courts of appeal) by determining that a self-serving affidavit, without more evidence, can defeat a motion for summary judgment.

**{¶34}** Applying this established standard to the present case demonstrates the flaw in the dissenting opinion's analysis. Resolutely, Stedke's 15 word denial (in his affidavit) fails to create a genuine issue of material fact. That is, there is no evidence in the record before this court showing that Stedke responded to the defendants' motion for summary judgment with any specific details (based on his personal knowledge) about his conversation with Eisert to create a genuine dispute. Accordingly, there is no doubt that Stedke's words are self-serving and lack corroborating evidence to demonstrate a genuine issue of material fact.

{¶35} Based on the foregoing, the only evidence that the trial court could consider was Stedke's short, self-serving denial of the threats. That is, the only evidence in opposition to the defendants' motion for summary judgment that the trial court had to go on was Stedke's statement that he did not threaten Eisert. Clearly, the trial court did not err by granting summary judgment in favor of the defendants since, most notably, Stedke never specifically denied being in a "heated argument" with Eisert.

{¶36} Furthermore, an important point bears emphasis: Because Stedke's affidavit fails to present any evidence establishing a genuine issue of material fact, the resolution of this case does *not* require any credibility determination. The inquiry before this court is not whether Stedke or the defendants are credible, but rather whether their affidavits satisfy the evidentiary requirements of Civ.R. 56. Having failed to present any evidence beyond a bare denial, Stedke's affidavit does not meet that threshold.

{¶37} For these reasons, we conclude that Stedke's self-serving affidavit is insufficient to demonstrate the existence of a genuine issue of material fact. *See Wells Fargo Bank v. Blough*, 2009-Ohio-3672, ¶ 18 (4th Dist.) ("His self-serving affidavit that denies his agreement is insufficient to demonstrate the existence of a genuine issue of material fact."). As a result, the plaintiffs failed to demonstrate specific facts showing the existence of a triable issue. Therefore, the trial court did not err by granting summary judgment in favor of the defendants.

**{¶38}** The plaintiffs' assignment of error is overruled.

**{¶39}** Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER, J., concurs.**

**WILLAMOWSKI, J., DISSENTS.**

**{¶40}** I respectfully dissent from the majority opinion for two reasons. First, how self-serving affidavits are to be considered at summary judgment is in need of clarification. *See Kiser v. United Dairy Farmers*, 2023-Ohio-2136, ¶ 24 (10th Dist.) (holding that "'self-serving' testimonial evidence that conforms to the requirements of Civ.R. 56(C) must be considered by the trial court and treated as any other evidence in the record at summary judgment."); *Crockett Homes, Inc. v. Tracy*, 2024-Ohio-1464, ¶ 114-115 (7th Dist.) ("A party may be in the best position to offer testimony in support of [his or] her cause.").

**{¶41}** Second, the resolution of this issue in this case relies on a credibility determination. To defeat summary judgment, Stedke would have to prove a negative: he has to establish that he did not threaten Eisert. If Stedke did not threaten Eisert, what evidence could he produce to corroborate his position under the facts of this case? Given the circumstances in this case, a trier of fact should determine whether Eisert's account or Stedke's account of these events is credible. *Kiser* at ¶

16 ("At summary judgment, it is not the role of the court to resolve a disputed fact or weigh the credibility of the evidence * * *").

**/hls**