OPINION
{¶ 1} Appellant, Rolinda D. Lyons, appeals from the judgment of the Ashtabula County Court of Common Pleas granting summary judgment in favor of appellees, Harriet Scott, et al. For the reasons discussed in this opinion, we affirm the trial court's liability determination, modify the damages award, and affirm the same as modified.
 {¶ 2} On August 10, 2006, Clifford and Harriet Scott executed powers-of-attorney (POA) naming their granddaughter, Rolinda Lyons, their attorney-in-fact. At *Page 2 
the time the POA was executed, the Scotts lived in New York City and Rolinda was, and remains, a denizen of Ohio. The POA conferred limited authority on Rolinda to assist the Scotts with their affairs. Basically, Rolinda was authorized to make any and all payments on debts owed by the Scotts and to collect any and all debts owed to the Scotts. It permitted Rolinda to sell or hypothecate any stocks or securities owned by the Scotts and allowed her to file lawsuits on the Scotts' behalf and defend the same. It further authorized Rolinda to maintain or rebuild structures existing on properties owned by the Scotts and to hire and pay workmen or other agents as Rolinda saw fit. Nothing in the POA gave Rolinda the authority to transfer the Scotts' assets to herself or others nor did it give her the authority to liquidate or sequester the Scotts' assets for any purpose.
 {¶ 3} In September of 2006, despite the limited authority of the POA, Rolinda began what developed into a systematic transfer/redistribution of the Scotts' funds and assets. According to Rolinda, she became concerned about the elderly couple's health and, upon the advice of an accountant, proceeded to formulate a financial plan to place the Scotts' assets out of reach of Medicaid. She subsequently retained counsel on the Scotts' behalf for the creation of a trust. In December of 2006, Lyons, as Grantor, created the Rolinda Lyons Irrevocable Family Trust, under which she named herself as trustee and the primary beneficiary. Specifically, the instrument reads:
 {¶ 4} "The Trustee shall use and apply such of the income and principal *** as the trustee, in her sole and absolute discretion, considers necessary or advisable for the care, comfort, welfare, and maintenance of the Grantor for the life of the Grantor." *Page 3 
 {¶ 5} The trust named the Scotts and their son, Robert L. Lyons, Sr., and daughter-in-law, Dorothy Lyons as secondary beneficiaries, providing:
 {¶ 6} "The Trustee shall use and apply such of the income and principal *** as the trustee, in her sole and absolute discretion, considers necessary or advisable for the care, comfort, welfare, and maintenance of Clifford A. Scott, Harriett A. Scott, Robert L. Lyons and Dorothy L. Lyons taking into consideration the life situation of the foregoing beneficiaries and any other income and the financial resources of the beneficiary, so far as known to the trustee."
 {¶ 7} The trust additionally provided:
 {¶ 8} "Five years after the death of the survivor of Clifford A. Scott, Harriett A. Scott, Robert L. Lyons and Dorothy L. Lyons the trust shall terminate and the remaining assets shall be paid over to Rolinda Lyons or her issue ***."
 {¶ 9} The trust was subsequently funded with over one million dollars solely derived from the Scotts' bank accounts. Rolinda then proceeded to liquidate a total of four annuities (with penalties) belonging to the couple and transferred the resulting funds into various bank accounts to which she had access. Rolinda also opened two certificates of deposit, titled in her name, funded entirely with the Scotts' money. Rolinda additionally transferred title of the Scotts' Mitsubishi Galant to herself and, after transferring title, she then purchased a Honda Odyssey van using the Scotts' money. Rolinda maintained all of the above actions were taken at the request of her grandmother, Harriet Scott.
 {¶ 10} In addition to the foregoing actions, Rolinda made multiple monetary transfers to herself and her father, Robert L. Lyons, Sr., using the POA. All said, *Page 4 
Rolinda channeled a documented $97,000.00 to her father and over $150,000.00 to herself. Rolinda had various explanations for the transfers she made to herself. She asserted she felt certain of the transfers were necessary to avoid Medicaid seizure. The funds from other transfers she alleged were used for a range of innocuous purposes, e.g., buying groceries, procuring Christmas gifts, and purchasing furniture, all at Mrs. Scott's direction. However, Rolinda was unable to produce receipts for these items or otherwise substantiate her claims with independent proof that Harriet Scott had indeed directed the transfers.
 {¶ 11} Further, Rolinda explained that the transfers to Robert were made to help fund the construction of a new home in Ohio for the Scotts. Notwithstanding Rolinda's justification, it is unclear for what purpose the funds were used. In any event, and regardless of her aims, nothing in the POA gave Rolinda the authority to make such transfers let alone build a home at the Scotts' expense.
 {¶ 12} The new home was eventually constructed and titled in Robert, Sr.'s name. The purchase of the land on which the home was erected, as well as the entire cost of construction, was financed at the Scotts' expense.
 {¶ 13} After discovering the scope of Rolinda's actions, the Scotts revoked the POA and demanded their assets be returned to their control on March of 2007. Rolinda declined to return the assets to the Scotts with the exception of $15,000.00 which she evidently tendered for payment of the couple's taxes.
 {¶ 14} Based upon the foregoing, the Scotts filed a complaint against Lyons in the Ashtabula County Court of Common Pleas on May 29, 2007. The complaint set forth claims for breach of fiduciary duty, conversion, unjust enrichment/constructive *Page 5 
trust, violation of R.C. 5808.13, removal of trustee, punitive damages and attorney fees. The Scotts also filed a motion for a temporary restraining order and preliminary injunction seeking to have Lyons' accounts, inter alia, frozen. The trial court granted the motion, which was eventually converted into a preliminary injunction.
 {¶ 15} Harriett Scott died on July 22, 2007. On August 31, 2007, appellees filed a motion to substitute parties requesting that Robert L. Lyons, Jr., Executor of the Estate of Harriett Scott be substituted as a party in the case. The trial court subsequently granted the motion.
 {¶ 16} On August 21, 2007, appellees filed a motion for summary judgment seeking an order to return all funds and assets wrongfully transferred from appellees as well as seeking a judgment against Rolinda in the amount of $371,705.24. Attached to appellees' motion were relevant portions of Rolinda's depositions with accompanying exhibits, e.g., account summaries and cancelled checks, as well as the affidavits of Mr. and Mrs. Scott.
 {¶ 17} The account summaries and checks revealed that Rolinda regularly withdrew funds for purposes not expressly authorized by the POA, e.g., for "cash" or directly to herself. In her deposition, Rolinda stated that these funds were used for purchases, furniture (for the home being built in Ohio), or to compensate herself for the assistance she provided the aging couple. While Rolinda contended she only made such withdrawals at the direction of Harriett Scott, she admitted there were no independent witnesses to corroborate Mrs. Scott's purported directives.
 {¶ 18} Contrary to Rolinda's representations, the Scotts' affidavits indicated they appointed Rolinda their attorney-in-fact "primarily to allow [her] to execute documents *Page 6 
on [their] behalf related to the sale of [their] house in New York." The affidavits further stated the Scotts neither knew about nor authorized the creation of the trust and did not authorize Rolinda to transfer funds out of their name into the trust or anywhere else. The Scotts further stated they did not authorize Rolinda to engage in any estate planning on their behalf nor to transfer title of their car into her name. The Scotts also stated they did not authorize the subsequent purchase of a van titled in Rolinda's name.
 {¶ 19} On November 26, 2007, Lyons filed her response memorandum and attached her own affidavit and affidavits of her sister, Anita Lyons (Anita), and her mother, Dorothy Lyons (Dorothy).[1] In her response motion and attached affidavit, Lyons steadfastly maintained the Scotts were fully aware of each transaction and transfer. She claimed she created the trust, transferred the assets, titled the vehicles in her name, and liquidated the annuities to shelter the Scotts' considerable estate from the possibility of Medicaid seizure. During her deposition she stood by her claim that the Scotts endorsed her plan and encouraged her to move forward with it.
 {¶ 20} Dorothy's affidavit echoed Rolinda's representation that the transfers were occasioned by the concern that, if the Scotts were placed in a nursing home, Medicaid could seize their assets. She also maintained that Harriett Scott had made representations that she wanted a home to be built for her son (Dorothy's now-deceased husband), Robert L. Lyons, Sr.
 {¶ 21} Anita's affidavit stated the Scotts directed Rolinda to use their assets to construct and furnish the home in Conneaut, Ohio; she further testified on many occasions she "heard" her grandmother state she wanted the home titled in the name of *Page 7 
her son, Robert L. Lyons, Sr. Finally, Anita averred that while she was unaware of its terms until the inception of the lawsuit, she had heard the Scotts remark on their satisfaction with the trust.
 {¶ 22} On April 25, 2008, after considering the motions and their various evidentiary attachments, the trial court granted summary judgment in appellees' favor. The appellees were ordered judgment in the amount of $371,705.24, plus interest.[2] The court further ordered that any of the Scotts' funds which were transferred into the defendants' accounts during the relevant time period or any funds being held in Rolinda's name or in the name of the trust be returned to appellees. Finally, the court ordered the titles to the vehicles transferred out of Rolinda's name and the vehicles themselves be returned to appellees.
 {¶ 23} Rolinda now appeals and asserts the following assignment of error:
 {¶ 24} "The trial court erred in granting the motion for summary judgment in that there were genuine issues of material fact indicating the Plaintiffs were not, as a matter of law, entitled to the relief sought in their motion for summary judgment."
 {¶ 25} We review a trial court's decision to grant summary judgment de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Summary judgment is appropriate under Civ. R. 56(C) when (1) there is no genuine issue of material fact remaining to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to *Page 8 
but one conclusion, and viewing the evidence in favor of the nonmoving party, that conclusion favors the moving party. Temple v. Wean United,Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 26} The moving party bears the initial burden of providing the trial court a basis for the motion and is required to identify portions of the record demonstrating the absence of genuine issues of material fact pertaining to the non-moving party's claim. Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. The burden then shifts to the non-moving party to set forth specific facts that would establish a genuine issue for trial. Id. The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a blank assertion that the nonmoving party has no evidence to prove its case, but must be able to specifically point to some evidence of the type listed in Civ. R. 56(C). Dresher, supra. Similarly, the non-moving party may not rest on conclusory allegations or denials contained in the pleadings; rather, he or she must submit evidentiary material sufficient to create a genuine dispute over material facts at issue. Civ. R. 56(E); see, also,Dresher, supra.
 {¶ 27} To determine whether a genuine issue exists, a reviewing court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must necessarily prevail as a matter of law. Spatar v. Avon OaksBallroom, 11th Dist. No. 2001-T-0059, 2002-Ohio-2443, at ¶ 16, citingTurner v. Turner, 67 Ohio St.3d 337, 340, 1993-Ohio-176. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly *Page 9 
preclude the entry of summary judgment." Anderson v. Liberty Lobby,Inc. (1986), 477 U.S. 242, 248.
 {¶ 28} Initially, appellees assert the underlying judgment is not a final appealable order because it did not dispose of appellees' claim for attorney fees. In support of their argument, appellees cite the Supreme Court of Ohio's recent decision in Internl. Bhd. of ElectricalWorkers, Local Union No. 8 v. Vaughn Industries, L.L.C.,116 Ohio St.3d 335, 2007-Ohio-6439, wherein the Court held:
 {¶ 29} "When attorney fees are requested in the original pleadings, an order that does not dispose of the attorney-fee claim and does not include, pursuant to Civ. R. 54(B), an express determination that there is no just reason for delay, is not a final appealable order."Internl. Bhd., supra, at paragraph two of the syllabus.
 {¶ 30} In their amended complaint, appellees sought attorney fees in their prayer for relief. Courts have concluded that a request for attorney fees set forth in a complaint's prayer for relief should not be considered a separate and distinct claim and therefore not subject to Civ. R. 54(B). See Jones v. McAlarney Pools, Spas Billiards, Inc., 4th Dist. No. 07CA34, 2008-Ohio-1365, at ¶ 12; see, also, Knight v.Colazzo, 9th Dist. No. 24110, 2008-Ohio-6613, at ¶ 9. However, even if we were to construe appellees' request for attorney fees as a separate claim, the trial court included the Civ. R. 54(B) language in its judgment entry awarding appellees' summary judgment. The underlying judgment is therefore a final appealable order irrespective of how the prayer for attorney fees is construed.
 {¶ 31} With this in mind, Rolinda's sole assignment of error argues that there are genuine issues of material fact regarding whether appellees knew about, understood, *Page 10 
and ratified the asset transfers under consideration. Before discussing the merits of Rolinda's claim, a statement of the law governing powers of attorney shall be instructive.
 {¶ 32} A power of attorney is a written instrument which provides an agent authority to perform specific acts on behalf of a principal.In re Meloni, 11th Dist. No. 2003-T-0096, 2004-Ohio-7224, at ¶ 34. An attorney-in-fact is an agent of the principal and stands in a fiduciary relationship with his or her principal. Id. One acting as a fiduciary for another owes a duty of the utmost loyalty and honesty to the principal. Testa v. Roberts (1988), 44 Ohio App.3d 161, 164. Accordingly, unless the instrument explicitly authorizes an attorney-in-fact to transfer the principal's property to herself or to others, such actions are deemed prohibited. MacEwen v. Jordan, 1st Dist. No. C-020431, 2003-Ohio-1547. In other words, "[a]n attorney-in-fact may not make gratuitous transfers of the principal's assets unless the power of attorney from which the authority is derived expressly and unambiguously grants the authority to do so." Id.
 {¶ 33} Notwithstanding the foregoing rules, a principal may ratify the acts of his or her agent notwithstanding limitations on that agent's authority. Testa, supra, at 165. However, the fiduciary status of an attorney-in-fact creates an affirmative duty to inform a principal of all facts relating to the subject matter of his or her agency that affect the principal's interest. Id. Thus, ratification of an agent's actions by a principal cannot occur unless that principal is fully aware and possesses a complete understanding of the acts performed. Id., citing Morr v. Crouch (1969), 19 Ohio St.2d 24, 29. Where an agent's actions are in question, the agent must "clearly show" that the principal had full knowledge of all the facts pertaining to the actions.Testa, supra. *Page 11 
 {¶ 34} The law is zealous in guarding against abuses of fiduciary relationships. In re Termination of Employment of Pratt (1974),40 Ohio St.2d 107, 115. As such, any transfer of a principal's property to his or her attorney-in-fact is viewed with some suspicion. Hoopes v.Hoopes, 5th Dist. No. 2006 CA 00220, 2007 Ohio App. LEXIS 1582, *12, citing Studniewski v. Krzyzanowski (1989), 65 Ohio App.3d 628, 632. Moreover, "self-dealing transactions by a fiduciary are presumptively invalid." Hoopes, supra; see, also, Rudloff v. Efstathiadis, 11th Dist. No. 2002-T-0119, 2003-Ohio-6686. Where questions of self-dealing arise, an attorney-in-fact is required to demonstrate the fairness of his or her conduct. In re Scott (1996), 111 Ohio App.3d 273, 276,
 {¶ 35} In the case at bar, the powers of attorney appointing Rolinda Lyons attorney-in-fact for Clifford and Harriet Scott do not include any provision expressly authorizing Lyons to create trusts, transfer funds to herself or other family members, liquidate annuities, purchase vehicles, buy real property, or erect buildings with the principals' resources. Rather, a summary of Rolinda's powers under the instruments are as follows: She had authority (1) to enter upon and take possession of any lands that may belong to the principals or to which they may be entitled; (2) to collect and receive any rents, profits or incomes from such lands; (3) to pay any taxes or other assessments levied upon any of the principals' lands; (4) to make, execute, and deliver any deed or lease regarding such lands or manage, repair, rebuild, or reconstruct any buildings that exist or are erected upon the lands; (5) to extend, renew, replace, or increase any mortgage affecting such lands; (6) to obtain insurance of any kind on any of such lands and/or personal property; (7) to demand, sue for, and collect all goods, claims or debts owed to the principals; (8) to make, execute, endorse, and collect any or *Page 12 
all bills of exchange, drafts, notes, and trade acceptances; (9) to pay all sums of money owed in the principals' names; (10) to sell, mortgage, or hypothecate any and all shares of stock or other securities; (11) to defend or settle all actions, suits, accounts, or claims; (12) to file any proof of debt or take other proceedings under the Bankruptcy Act; (13) to hire accountants, attorneys-at-law, workmen, and others, as well as remove the same and remunerate them accordingly; and (14) to appoint one or more attorneys-in-fact as her substitute.
 {¶ 36} A review of the powers of attorney executed by the Scotts demonstrate Rolinda was not "expressly and unambiguously" authorized to create the trust, make gratuitous transfers to herself or others, buy vehicles, or buy real estate and construct a home at the Scotts' expense. We recognize that Rolinda asserts she made the transfers, particularly those related to the trust and construction of the home, to protect the Scotts' assets from seizure by Medicaid. However, nothing in the trust instrument confers upon her the authority to engage in such financial stratagems. And, in any event, Rolinda produced no evidence that her actions would accomplish her purportedly well-meaning ends.
 {¶ 37} Rolinda also testified that much of the cash withdrawn from the Scotts' accounts through her use of the POA went to the purchase of furniture and other accessories for the house being built in Ohio, groceries, and Christmas gifts. Despite these varied justifications for the withdrawals, Rolinda failed to produce any independent evidence that would support her contentions, e.g., receipts from the transactions and/or some verifiable acknowledgement from the Scotts that the transfers were accomplished for the purposes asserted. Instead, the uncontroverted evidence *Page 13 
shows that Rolinda withdrew vast sums of the Scotts' money, which was frequently deposited in checking accounts opened in her name or placed in accounts to which she had access, for alleged purchases that cannot be traced or otherwise verified.
 {¶ 38} Furthermore, and most significantly, the Scotts mutually averred, via affidavit, they did not authorize most of the transfers Rolinda claimed she conducted at their request and on their behalf. The Scotts testified they did not know about and therefore did not authorize Rolinda to create the trust. They testified they did not authorize any asset transfers for the purpose of funding the trust. They further asserted they neither authorized Rolinda to transfer funds out of their name nor did they authorize her to engage in any form of Medicaid planning. In fact, Mr. Lyons explicitly stated he did not authorize Rolinda to engage in any estate planning on his or his wife's behalf as he had no "fear of Medicaid." Finally, the Scotts testified they did not authorize Rolinda to liquidate or close out their annuities nor did they authorize her to purchase a vehicle titled in her name. Even when viewed in a light most favorable to Rolinda, the Scotts' affidavit and the limited scope of the POA demonstrate appellees are entitled to summary judgment as to each of the matters to which they testified.
 {¶ 39} With respect to the purchase of real estate and construction of the home in Conneaut, Ohio, the affidavits of Dorothy and Anita each indicate Scotts were aware of the construction and also knew the home would be titled in Robert L. Lyons, Sr.'s name. Further, in her deposition, Rolinda testified she resided in the home after it was built but pointed out that, after the sale of their New York residence, the Scotts moved in with her. However, as indicated above, nothing in the POA vested Rolinda with the power to purchase real estate and/or construct a home. While the Scotts' affidavits do *Page 14 
not specifically state Rolinda was unauthorized to purchase real estate and construct buildings, we cannot, from this silence, conclude the couple ratified these actions, particularly where no such power was conferred upon Rolinda via the POA.
 {¶ 40} With respect to the affidavits attached to Rolinda's response memorandum, Rolinda's and Dorothy's affidavits are fundamentally self-serving. As defendants in the underlying action, their representations opposing appellees evidence is of little value. This court has previously held that a non-moving party may not avoid summary judgment by simply providing a self-serving affidavit contradicting the moving party's evidence. Greaney v. Ohio Turnpike Commission, 11th Dist. No. 2005-P-0012, 2005-Ohio-5284, at ¶ 16; see, also, Belknap v.Vigorito, 11th Dist. No. 2003-T-0147, 2004-Ohio-7232, at ¶ 27. The evidentiary value of Rolinda's and Dorothy's affidavits is, at best, negligible. Further, Anita's affidavit simply indicates she was "well-aware" that the Scotts directed Rolinda to build the home at their expense. However, she does not assert or elaborate on how she became privy to such information and, in any event, her alleged awareness is premised upon inadmissible hearsay.
 {¶ 41} Given the state of the evidence in the record, we cannot conclude the Scotts possessed full knowledge of and subsequently authorized Rolinda's purchase of the land and construction of the home. Although Rolinda makes ambiguous references to deposition testimony of Clifford Scott in support of her assertion that the Scotts were aware of the construction of the Conneaut home and the decision to title it in Robert L. Lyons name, no such deposition was filed.[3] Even when viewed in Rolinda's favor, the *Page 15 
evidence is insufficient to create a genuine issue of material fact that the Scotts ratified Lyons' actions related to the construction of the home in Conneaut.
 {¶ 42} Bearing in mind the language of the powers of attorney as well as the averments contained in the Scotts' affidavits, the transactions relating to the creation and funding of the trust, the monetary transfers, the liquidation of the annuities, the purchase of real estate and construction of the home, the vehicle title transfer, and the purchase of the new vehicle are outside the scope of the powers possessed by Rolinda. Without some proper evidence indicating Clifford or Harriett Scott ratified the transactions at issue, we are compelled to conclude they represent self-dealing on Rolinda's behalf. Rolinda failed to provide any proof, other than her own self-serving testimony, of the fairness of these transactions. We consequently hold all the actions which Rolinda was not duly empowered to engage in are invalid. Thus, the trial court did not err in granting appellees summary judgment regarding (1) the creation of the trust and all subsequent transfers of the Scotts' funds into the trust; (2) the unauthorized transfer of funds to herself and her father; (3) the purchase of land and construction of the house in Conneaut, Ohio; (4) the penalties incurred for her unauthorized liquidation of the Scotts' annuities; and (5) the transfer of title of both vehicles.
 {¶ 43} As a post script to our analysis, Rolinda properly points out that, in its judgment entry, the trial court commented on the credibility of the evidence as it pertained to the various asset transfers to Rolinda and her father. Rolinda is correct that a trial court may not engage in a weighing of the evidence during a summary *Page 16 
judgment exercise. However, in this instance, the trial court's purported consideration of evidential credibility does not undermine its ultimate decision.
 {¶ 44} As discussed throughout this opinion, there is no evidence in the record indicating Rolinda had the authority to transfer the Scotts' assets. This conclusion is not premised upon a weighing of the evidence, but rather upon the uncontroverted evidence that Rolinda was not entitled to act as she did. First, the POA did not confer upon Rolinda the power to make the transfers. Moreover, the Scotts specifically and unequivocally averred they did not authorize the transfers. Without the express and unambiguous authority in the POA or some indicia of ratification, the only conclusion that can be drawn, even when viewing the facts in Rolinda's favor, is she was unauthorized to act as she did. Thus, although the trial court improperly indicated it engaged in a weighing of the evidence, the conclusion it drew is nevertheless valid.
 {¶ 45} Finally, while we agree with the trial court's legal conclusions as to liability, our review of the record reveals that the trial court's computation of damages does not specifically correspond to the evidence in the record. To wit, the trial court found Rolinda transferred $163,196.26 to herself and $97,000.00 to her father, Robert L. Lyons, Sr. The evidence in the record supports the latter total. To wit, the record shows that Rolinda issued two checks to her father from the Scotts' account: one check for $80,000.00 (Check No. 1003) and one check for $5,000.00 (Check No. 1020). The record also reveals an additional $12,000.00 was deposited in her father's account on December 1, 2006, during the period she possessed the POA. Rolinda testified that this deposit was drawn from the Scotts' money for a "building fund." Although Rolinda indicated this money was used to fund the construction of the home in Conneaut, she *Page 17 
produced no evidence which would independently confirm that her father actually used the funds for this purpose.
 {¶ 46} That said, the evidence reveals Rolinda was also charged with the $5,000.00 drawn via Check No. 1020. In addition, the accounting adopted by the trial court charges Lyons with drawing an additional $5,000.00 on November 24, 2006 through check number 1180. Check number 1180 was drawn on November 14, 2006 in the amount of $5,000.00; however, a review of the evidence fails to disclose any check for $5,000.00 written or drawn on November 24, 2006. As Rolinda should not be twice accountable for check number 1020 and should not be legally responsible for a check that does not appear in the record, the amount transferred to Rolinda shall be downwardly adjusted by $10,000.00 for a final total of $153,196.26.
 {¶ 47} The remaining funds as tabulated by the trial court are accurate and therefore, in addition to the amount held in the trust, appellees shall be entitled to recover $361,705.24 (i.e., 371,705.24 — $10,000). In its judgment entry, the trial court also ordered the funds being held in account numbers 4607368822, 4605528504, and 4605958703 at defendant Sky Bank be returned to plaintiffs-appellees. The record reveals these accounts had been funded with the Scotts' money and were properly subtracted from the original net amount charged against Rolinda.
 {¶ 48} As there is no genuine issue of material fact as to whether Rolinda had the authority to conduct the transactions under consideration, there is no question to be litigated regarding her liability. Appellant's sole assignment of error is therefore overruled. However, due to the $10,000.00 error in the trial court's calculation of damages, this court modifies the award from $163,196.26 to $153,196.26 as discussed *Page 18 
above. The judgment entry of the Ashtabula County Court of Common Pleas is accordingly modified and affirmed as modified.
DIANE V. GRENDELL, J., concurs,
COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.
[1] Dorothy Lyons was a named defendant in the underlying complaint; however, she is not an appellant in this appeal.
[2] This amount represents the funds transferred directly to Lyons ($163,196.26), the funds transferred to Robert L. Lyons, Sr. ($97,000.00), the funds transferred to the contractors who built the home in Conneaut, Ohio ($137,000.00), and the penalties for prematurely liquidating the Scotts' annuities ($31,099.42), for a total of $428,295.68. The court then subtracted the amounts remaining in the bank accounts (in total, $56,590.44) which, in a separate order, the court required Lyons to transfer to appellees.
[3] In relation to this issue, the trial court noted, in its judgment entry, that Rolinda cited to both Clifford Scott's and Charles Borsukoff's (the principal contractor who built the home in Conneaut) depositions in her memorandum in response to appellees' motion for summary judgment. The trial court properly pointed out that because these depositions were not filed in the record, any reference to these depositions were not considered.