[Cite as *United Gulf Marine, L.L.C. v. Continental Refining Co., L.L.C.*, 2019-Ohio-666.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

UNITED GULF MARINE, LLC,

    PLAINTIFF-APPELLEE,              CASE NO. 1-18-35

    v.

CONTINENTAL REFINING
COMPANY, LLC,                      O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2017 0040

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   February 25, 2019

APPEARANCES:

    *Aaron L. Bensinger* for Appellant

    *Anthony J. Hornbach* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Continental Refining Company, LLC ("CRC"), appeals the June 13, 2018 judgment entry of the Allen County Court of Common Pleas awarding $322,836.80 in attorney fees in favor of plaintiff-appellee, United Gulf Marine, LLC ("UGM"). For the reasons that follow, we affirm in part and reverse in part.

{¶2} In a previous appeal, this court recited much of the factual and procedural background relevant to this case, and we will not duplicate those efforts here. *United Gulf Marine, LLC v. Continental Refining Co., LLC*, 3d Dist. Allen No. 1-17-40, 2017-Ohio-9083. In short, UGM alleged that CRC breached two commercial contracts—the Transmix Agreement and the Naphtha Agreement.[1] *See id.* at ¶ 2. On December 18, 2017, we affirmed the judgment of the trial court awarding summary judgment in favor of UGM as to Counts I and V of its second amended complaint. *Id.* at ¶ 1.

{¶3} Relevant to this appeal, on September 13, 2017, UGM filed a motion for attorney fees as to Count V of its second amended complaint. (Doc. No. 40). CRC filed a memorandum in opposition to UGM's motion for attorney fees as to Count V on September 26, 2017. (Doc. No. 53). On October 4, 2017, UGM filed

---

[1] In UGM's second amended complaint, Counts I through IV relate to the Transmix Agreement and Counts V and VI relate to the Naphtha Agreement. *United Gulf Marine, LLC v. Continental Refining Co., LLC*, 3d Dist. Allen No. 1-17-40, 2017-Ohio-9083, ¶ 4.

a reply to CRC's memorandum in opposition to its motion for attorney fees as to Count V. (Doc. No. 57). On October 24, 2017, the trial court stayed UGM's motion for attorney fees as to Count V pending the resolution of CRC's appeal of the trial court's judgment awarding summary judgment in favor of UGM as to Counts I and V. (Doc. No. 60).

{¶4} After this court affirmed the judgment of the trial court's summary-judgment award in favor of UGM as to Counts I and V, the trial court on December 22, 2017 granted summary judgment in favor of UGM on one of the remaining counts of its second amended complaint—Count IV—and CRC's second counterclaim and denied summary judgment as to Count III of UGM's second amended complaint and CRC's first counterclaim. (*See* Doc. Nos. 62, 73, 76). CRC appealed the trial court's judgment on January 4, 2018, but later dismissed its appeal on March 26, 2018. (Doc. Nos. 79, 109). The case proceeded to a bench trial on January 12 and 23, 2018. (*See* Doc. Nos. 93, 94). On February 27, 2018, the trial court awarded judgment in favor of UGM as to Count III of its second amended complaint and dismissed CRC's first counterclaim. (Doc. No. 105).[2]

{¶5} After all of the outstanding claims were resolved, on March 23, 2018, UGM filed a motion for attorney fees on the claims and counterclaims on which it

---

[2] The trial court concluded that Counts II and VI—which alleged claims of unjust enrichment—were rendered moot by its prior decision awarding summary judgment in favor of UGM as to Counts I and V. (*See* Doc. No. 105).

prevailed under the Transmix Agreement and renewed its motion for attorney fees as to Count V under the Naphtha Agreement. (Doc. Nos. 106, 107). CRC filed memoranda in opposition to UGM's motions for attorney fees on April 5, 2018. (Doc. Nos. 110, 111). After the parties exchanged a number of motions, the trial court ultimately permitted UGM to file instanter its replies to CRC's memoranda in opposition to its motions for attorney fees. (*See* Doc. Nos. 112, 113, 114, 115, 116, 117, 118, 119, 121, 122, 123).

{¶6} On May 21, 2018, CRC filed a motion to strike UGM's renewed motion for attorney fees as to Count V alleging that its motion was denied by the trial court's judgment entry issued on February 27, 2018. (Doc. No. 125). On May 31, 2018, UGM filed a memorandum in opposition to CRC's motion to strike. (Doc. No. 128).

{¶7} After a hearing on May 21, 2018, the trial court on June 13, 2018 awarded UGM $322,836.80 in attorney fees. (Doc. No. 131).

{¶8} CRC filed its notice of appeal on June 29, 2018. (Doc. No. 134). It raises one assignment of error for our review.

**Assignment of Error**

**Plaintiff is Not Entitled to Any Attorney's [sic] Fees.**

{¶9} In its assignment of error, CRC argues that the trial court erred by awarding UGM $322,836.80 in attorney fees. Specifically, CRC argues that (1)

UGM failed to specifically plead for attorney fees; (2) the trial court improperly reconsidered UGM's motion for attorney fees under Count V as it relates to the Naphtha Agreement; (3) the indemnity provision of the Transmix Agreement does not apply to attorney fees; (4) the attorney-fee provisions of both contracts are unenforceable; and (5) UGM failed to prove reasonable attorney fees.

*Standard of Review*

**{¶10}** "The decision to award attorney fees and the amount thereof are within the discretion of the trial court." *Technical Constr. Specialties, Inc. v. New Era Builders, Inc.*, 9th Dist. Summit No. 25776, 2012-Ohio-1328, ¶ 26, citing *Cassaro v. Cassaro*, 50 Ohio App.2d 368, 373-374 (8th Dist.1976). Therefore, we review a trial court's determination regarding attorney fees for an abuse of discretion. *Brittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

**{¶11}** "Attorney fees are generally not recoverable in contract actions." *Technical Constr. Specialties, Inc.* at ¶ 26, citing *First Bank of Marietta v. L.C. Ltd.*, 10th Dist. Franklin No. 99AP-304, 1999 WL 1262058, *8 (Dec. 28, 1999). "Such a principle comports with the 'American Rule' that requires each party involved in litigation to pay its own attorney fees in most circumstances." *Id.*, citing *Sorin v.*

*Bd. of Edn.*, 46 Ohio St.2d 177, 179 (1976). "As exceptions to that rule, recovery of attorney fees may be permitted if (1) a statute creates a duty to pay fees, (2) the losing party has acted in bad faith, or (3) the parties contract to shift fees." *Id.*, citing *McConnell v. Hunt Sports Ents.*, 132 Ohio App.3d 657, 699 (10th Dist.1999), citing *Pegan v. Crawmer*, 79 Ohio St.3d 155, 156 (1997).

{¶12} In this case, CRC raises five arguments as to why the trial court abused its discretion by awarding UGM attorney fees. In its first argument, CRC contends that UGM failed to adequately plead for attorney fees. Specifically, CRC contends that Ohio law requires parties to set "forth attorney's [sic] fees as a distinct claim in their pleadings * * *." (Appellant's Brief at 6). In support of its argument, CRC directs us to three cases from our sister appellate districts: *Jones v. McAlarney Pools, Spas & Billiards, Inc.*, 4th Dist. Washington No. 07CA34, 2008-Ohio-1365, *Knight v. Colazzo*, 9th Dist. Summit No. 24110, 2008-Ohio-6613, and *Scott v. Lyons*, 11th Dist. Ashtabula No. 2008-A-0032, 2009-Ohio-1141. CRC's argument is misguided. Those cases address whether the court had jurisdiction to hear the case, not whether the parties properly plead for attorney fees. Accordingly, we reject CRC's argument that UGM did not sufficiently plead for attorney fees.

{¶13} The caption of CRC's second argument contends that attorney fees are barred by the doctrine of res judicata. Stated another way, CRC contends that the

trial court improperly *reconsidered* its denial of attorney fees relative to Count V under the Naphtha Agreement. We agree.

**{¶14}** To determine whether the trial court improperly reconsidered its denial of attorney fees as to Count V, we must first determine whether the trial court's February 27, 2018 judgment entry constitutes a final, appealable order. Contrary to UGM's argument on appeal (and the trial court's conclusion in its June 13, 2018 judgement entry), the trial court's February 27, 2018 judgment entry constitutes a final, appealable order. *See Knight* at ¶ 9 (noting that because "a general request for attorney fees included in a prayer for relief should not be elevated to the status of a separate claim for relief," entries that do not specifically defer attorney-fee adjudication or do not defer the amount of fees after awarding attorney fees are final, appealable orders), citing *Jones* at ¶ 12, citing R.C. 2505.02 and Civ.R. 54(B). In its February 27, 2018 entry, in addition to disposing of the remaining claims of the parties, the trial court specifically denied "all of plaintiff's pending motions for sanctions and attorney's [sic] fees * * *." (Doc. No. 105). At that time, the only pending motion for attorney fees before the trial court was a motion for attorney fees as to Count V under the Naphtha Agreement. (*See* Doc. Nos. 40, 105). In other words, because UGM included its request for attorney fees as a general request in its second amended complaint and because the trial court's February 27, 2018 judgment entry did not defer attorney-fee adjudication or defer determining the

amount of fees after awarding attorney fees, the February 27, 2018 judgment entry is a final, appealable order.[3] *Accord Knight* at ¶ 8-9 (concluding that the trial court's judgment entry constituted a final, appealable order because "Knight asserted two *non-statutory* claims" for attorney fees in his complaint and the trial court's entry "makes no reference to the issue of attorney fees").

**{¶15}** Subsequent to the trial court's February 27, 2018 judgment entry, UGM filed a motion seeking attorney fees as to the claims on which it prevailed

---

[3] UGM also contends that the February 27, 2018 judgment entry is not a final, appealable order because it did not decide *all* of the issues—namely, UGM's January 17, 2017 motion for pre- and post-judgment interest and the amount of sanctions the trial court previously awarded UGM in its December 4 and 27, 2017 entries— or include a Civ.R. 54(B) certification. (*See* Doc. Nos. 71, 78, 97). We disagree. Based on the specific facts and circumstances of this case, the pre- and post-judgment interest requested by UGM "is mechanical and unlikely to produce a second appeal * * *." *State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 79 Ohio St.3d 543, 546 (1997). Indeed, UGM requested pre- and post-judgment interest under R.C. 1343.03(A), which, as UGM acknowledged, "'automatically bestows a right to statutory interest as a matter of law on a judgment, and does not leave any discretion to the trial court to deny such interest.'" (Doc. No. 97, quoting *Buchenroth v. Adkins*, 3d Dist. Logan No. 8-3-17, 2014-Ohio-257, ¶ 10). Moreover, UGM asserted that it was entitled to pre- and post-judgment interest pursuant to the rate agreed to by the parties in the contracts. *See Buchenroth* at ¶ 10 (noting that R.C. 1343.03(A) "provides that a creditor is entitled to pre-judgment and post-judgment interest at the statutory rate, 'unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract'"), quoting R.C. 1343.03(A). Thus, unlike the pre-judgment interest under R.C. 1343.03(C) at issue in *Miller v. First Internatl. Fid. & Tr. Bldg., Ltd.*, the pre- and post-judgment interest requested in this case does not require judicial fact-finding or the exercise of judicial discretion. 113 Ohio St.3d 474, 2007-Ohio-2457, ¶ 7. Moreover, the outstanding imposition of the amount of sanctions the trial court ordered in its December 4 and 27, 2017 entries does not prevent the trial court's February 27, 2018 judgment entry from being a final, appealable order. *See State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 556 (2001) (noting that the imposition of costs, attorney fees, contempt actions, and Civ.R. 11 sanctions are not judgments on the merits of an action; rather, those impositions require "the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate" and that "[s]uch a determination may be made after the principal suit has been terminated"); *Dillon v. Big Trees, Inc.*, 9th Dist. Summit No. 23831, 2008-Ohio-3264, ¶ 10 ("A motion for sanctions under Rule 11 of the Ohio Rules of Civil Procedure creates a proceeding ancillary to and independent of the underlying case."), citing *Vogel v. Shaw*, 9th Dist. Summit No. 20007, 2001 WL 111576, *2 (Feb. 7, 2001), citing *Risk Insurers v. Lorenz Equip.*, 69 Ohio St.3d 576 (1994), *Stevens v. Kiraly*, 24 Ohio App.3d 211 (9th Dist.1985), and *Baker v. USS/Kobe Steel Co.*, 9th Dist. Lorain No. 98CA007151, 2000 WL 14044 (Jan. 5, 2000). Indeed, in its motions to quash and strike, UGM requested that the trial court award it its fees and costs in preparing the motions, respectively. (Doc. Nos. 65, 72). Moreover, UGM's motion to strike specifically requested judgment under Civ.R. 11. (Doc. No. 65).

relative to the Transmix Agreement and renewed its motion seeking attorney fees as to Count V. In other words, UGM did not directly appeal or file a Civ.R. 60(B) motion as to the trial court's denial of attorney fees as to Count V. Therefore, while we conclude that UGM's post-judgment motion requesting attorney fees relative to the Transmix Agreement was properly before the trial court, we conclude that the trial court was without jurisdiction to reconsider its denial of UGM's request for attorney fees as to Count V.[4]

{¶16} "The Rules of Civil Procedure do not provide for motions for reconsideration; and therefore, 'motions for reconsideration of a final judgment in the trial court are a nullity.'" *Miller v. Cass*, 3d Dist. Crawford No. 3-09-15, 2010-Ohio-1930, ¶ 44, citing *Pitts v. Dept. of Transp.*, 67 Ohio St.2d 378, 379-380 (1981) and *Ham v. Ham*, 3d Dist. Wyandot No. 16-07-04, 2008-Ohio-828, ¶ 15. "Furthermore, any order that a trial court enters granting or denying any such motion is also a legal nullity." *Id.*, citing *Robinson v. Robinson*, 168 Ohio App.3d 476, 2006-Ohio-4282, ¶ 17 (2d Dist.), citing *Pitts* at 381. *See also id.* (explaining that "Civ.R.60(B), not a motion for reconsideration, is the proper way to bring to the trial court's attention its errors following a final judgment entry"), citing *Reagan v.*

---

[4] In its brief, CRC raises an argument in a footnote that UGM waived its ability to collect attorney fees. (*See* Appellant's Brief at 9, fn. 5). However, based on our conclusion that UGM properly requested attorney fees in its second amended complaint, CRC's argument that that UGM waived its ability to collect attorney fees because it failed to request such fees prior to the trial court's final judgment entry is without merit. *See Internatl. Bd. of Electrical Workers, Local Union No. 8 v. Vaughn Industries, L.L.C.*, 116 Ohio St.3d 335, 2007-Ohio-6439, ¶ 17 (holding "that when attorney fees are requested in the original pleadings, a party may wait until after entry of a judgment on the other claims in the case to file its motion for attorney fees").

*Ranger Transp., Inc.*, 11th Dist. Portage Nos. 95-P-0123 and 95-P-0124, 1996 WL 494886, *3 (Aug. 9, 1996).   For these reasons, UGM's "renewed" motion for attorney fees as to Count V is a nullity and the trial court's judgment entry awarding attorney fees as to Count V is likewise a nullity.  *See Bank of Am., N.A. v. Sullivan*, 3d Dist. Allen No. 1-15-09, 2015-Ohio-2736, ¶ 16.

**{¶17}** The remainder of CRC's assignment of error focuses on whether it is contractually obligated to pay UGM's attorney fees and the reasonableness of its fees.   However, based on our conclusion that the trial court's judgment entry awarding attorney fees as to Count V is a nullity, we need not address any arguments relative to the parties' contractual obligations regarding attorney fees or the reasonableness of attorney fees under the Naphtha Agreement.

**{¶18}** As to the Transmix Agreement, CRC contends that it is not contractually obligated to pay UGM attorney fees because the indemnity provision "does not apply as an attorney's [sic] fees provision * * * [because] the indemnity clause at issue does not apply to direct disputes, but only to third party disputes" and because the parties did not specifically negotiate the indemnity provision contained in the Transmix Agreement.  (Appellant's Brief at 11).[5]  As an initial matter, we must resolve CRC's contention that, as a matter of Ohio law, indemnity

---

[5] "The Supreme Court of Ohio has held that a trial court is not required to hold an evidentiary hearing on an application for attorney fees."  *Conway v. Conway*, 11th Dist. Lake No. 2009-L-013, 2009-Ohio-6231, ¶ 30, citing *State ex rel. Chapnick v. E. Cleveland City School Dist. Bd. of Educ.*, 93 Ohio St.3d 449, 452 (2001) and *McPhillips v. United States Tennis Assn. Midwest*, 11th Dist. Lake No. 2006-L-235, 2007-Ohio-3595, ¶

provisions are limited to third-party disputes. CRC's argument is misguided. *See, e.g.*, *Heffner Investments, Ltd. v. Piper*, 3d Dist. Mercer No. 10-07-09, 2008-Ohio-2495, ¶ 51 ("'Ohio law permits the enforcement of indemnity agreements.'"), quoting *Centennial Ins. Co. v. Cincinnati Ins. Co.*, 10th Dist. Franklin No. 90AP-352, 1990 WL 189977, *3 (Nov. 29, 1990), and citing *American Premier Underwriters, Inc. v. Marathon*, 3d Dist. Mercer No. 10-03-12, 2004-Ohio-2222, ¶ 28; *Black's Law Dictionary*, 1834 (10th Ed.2014) (defining indemnity contract as "[a] contract by which the promisor agrees to reimburse a promisee for some loss irrespective of a third person's liability"). *See DeMarco, Inc. v. Johns-Manville Corp.*, 10th Dist. Franklin No. 05AP-445, 2006-Ohio-3587, ¶ 18 ("The right of indemnity may result from an express agreement or contractual provision, or it may be implied from a contractual agreement or relationship."), citing *Indiana Ins. Co. v. Barnes*, 165 Ohio App.3d 262, 2005-Ohio-6474, ¶ 14 (10th Dist.), quoting *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238, 240 (1987); *Four Seasons Environmental, Inc. v. Westfield Cos.*, 93 Ohio App.3d 157, 159 (1st Dist.1994) ("Indemnity arises from contract, either express or implied, and is the right of a person who has been compelled to pay what another should have paid to require

---

32, citing *Cregar v. Ohio Edison Co.*, 11th Dist. Trumbull No. 89-T-4316, 1991 WL 1579, *4 (Jan. 11, 1991). However, when contractual terms regarding attorney fees are in dispute, the trial court must hold a hearing. *See, e.g.*, *Rulli v. Fan Co.*, 79 Ohio St.3d 374 (1997), syllabus. Because the terms of the indemnity provision of the Transmix Agreement were in dispute, the trial court properly conducted a hearing on the issue.

complete reimbursement."), citing *Travelers Indemn. Co. v. Trowbridge*, 41 Ohio St.2d 11 (1975), paragraph two of the syllabus.

**{¶19}** In this case, the parties included an express-indemnity agreement in the Transmix Agreement, which provides:

> 17. <u>Indemnity</u>: Subject to Section 16, Seller and Buyer mutually covenant to and shall protect, defend, indemnify and hold each other harmless from and against any and all claims, demands, suits, losses (including without limitation, costs of defense, attorneys' [sic] fees, penalties and interest). Damages, causes of action and liability of every type and character without regard to amount caused by, arising out of or resulting from the acts or omissions or negligence of such indemnifying party, its officers, employees or agents with respect to the purchase and sale of Product hereunder.

(Emphasis sic.) (Doc. No. 12, Ex. B). Therefore, because the parties expressly contracted for indemnification, we must interpret that contract provision to determine the rights and obligations of the parties. *See Four Seasons Environmental* at 159 ("An indemnity agreement, such as the one between Westfield and DeBra/indemnitors, is interpreted like any contract to conform to the intent of the parties."), citing *Worth* at 240-241. *See also Lake Pointe Townhomes Homeowners' Assn. v. Bruce*, 178 Ohio App.3d 756, 2008-Ohio-5264, ¶ 10 (8th Dist.).

**{¶20}** "A court's primary objective in the construction of any written agreement is to ascertain and give effect to the intent of the parties by examining the language that they chose to employ." *O.E. Meyer Co. v. BOC Group, Inc.*, 6th Dist. Erie No. E-99-002, 2000 WL 234549, *5 (Mar. 3, 2000), citing *Foster Wheeler*

*Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997). *See Brown v. Gallagher*, 4th Dist. No. 12CA3332, 2013-Ohio-2323, ¶ 10 ("Indemnity agreements must be interpreted in the same manner as other contracts."), citing *Portsmouth Insurance Agency v. Medical Mutual of Ohio*, 188 Ohio App.3d 111, 2009-Ohio-941, ¶ 18 (4th Dist.). First, a court must determine whether the disputed language is plain and unambiguous. *Beverly v. Parilla*, 165 Ohio App.3d 802, 2006-Ohio-1286, ¶ 24 (7th Dist.). *See also Aultman Hosp. Assn v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55 (1989). "The language is unambiguous if, from reading only the four corners of the instrument, the language is clear, definite, and subject to only one interpretation." *Beverly* at ¶ 24. "Contract language is ambiguous 'if it is unclear, indefinite, and reasonably subject to dual interpretations.'" *Mulchin v. ZZZ Anesthesia, Inc.*, 6th Dist. Erie No. E-05-045, 2006-Ohio-5773, ¶ 36, quoting *Beverly* at ¶ 24. *See also Bay Coast Properties, Inc. v. Natl. City Bank*, 6th Dist. Huron No. H-05-015, 2006-Ohio-2348, ¶ 15 (noting that "[t]he test for determining whether contract terms are ambiguous" is: "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument"), quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

**{¶21}** "If it is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties" and "[t]he interpretation of a written agreement is * * * a matter of law for the court," which an appellate court reviews de novo. *O.E. Meyer Co.* at *5, citing *Aultman Hosp. Assn.* at 53; *Bottomline Ink, Corp. v. Huntington Bancshares, Inc.*, 6th Dist. Wood No. WD-08-003, 2008-Ohio-2987, ¶ 11, citing *Alexander* at paragraph one of the syllabus. "De novo review requires us to conduct an independent review of the record without deference to the trial court's decision." *Matrix Technologies, Inc. v. Kuss Corp.*, 6th Dist. Lucas No. L-07-1301, 2008-Ohio-1301, ¶ 11, citing *Brown v. Cty. Commrs. of Scioto Cty.*, 87 Ohio App.3d 704, 711 (4th Dist.1993).

**{¶22}** "When a court finds an ambiguity in the contract language, the intent of the parties becomes a question of fact; in order to ascertain such intent, the trier of fact may rely on extrinsic evidence." *Mulchin* at ¶ 36, citing *Beverly* at ¶ 26. *See also Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984) ("However, if a term cannot be determined from the four corners of a contract, factual determination[s] of intent or reasonableness may be necessary to supply the missing term."). "'We will not reverse a factual finding of the trial court so long as some competent, credible evidence supports it.'" *Am. Servicing Corp. v. Wannemacher*, 3d Dist. Putnam No. 12-14-01, 2014-Ohio-3984, ¶ 15, quoting *Crane Hollow, Inc. v. Marathon Ashland Pipe Line*, LLC, 138 Ohio

App.3d 57, 74 (4th Dist.2000)*, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. *See also Myers v. Garson*, 66 Ohio St.3d 610, 614 (1993).

**{¶23}** "The parol evidence rule prohibits a party from contradicting or supplementing a written, fully-integrated contract with extrinsic evidence of prior or contemporaneous agreements, whether oral or written." *Bottomline Ink, Corp.* at ¶ 11, citing *Ed Schory & Sons, Inc. v. Society Natl. Bank*, 75 Ohio St.3d 433, 440 (1996). "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, ¶ 12.

**{¶24}** In this case, the trial court concluded that the indemnity provision is *not* "available only for 'claims, demands[,] suits, losses' brought by a third party * * *." (Doc. No. 131). We agree that the plain language of the indemnity provision is clear and unambiguous and requires the parties to indemnify one another, including the obligation to recover attorney fees.[6] *Compare Heffner Invests.*, 2008-

---

[6] Because we conclude that the indemnity provision of the Transmix Agreement is clear and unambiguous, parol evidence is inadmissible. *See, e.g., H & C Ag Servs., LLC v. Ohio Fresh Eggs, LLC*, 3d Dist. No. 6-15-02, 2015-Ohio-3714, ¶ 44, citing *Orchard Group, Inc. v. Konica Med. Corp.*, 135 F.3d 421, 429-430 (6th Cir.1998) ("[P]arole [sic] evidence is only admissible when the contract language is itself ambiguous as to its terms. * * * Here, there is simply no ambiguity. The * * * letter is not unclear * * *"), citing *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 794 (4th Cir.1989). Thus, we reject CRC's argument that we

Ohio-2495, at ¶ 54 ("Under the clear and unambiguous language of the indemnification clause provided in the lease agreement, Piper is to indemnify Heffner Investments from all causes of action, except those resulting from Heffner Investments['] negligent acts and omissions, and that obligation to indemnify includes attorney fees."); *Fabrication Group L.L.C. v. Willowick Partners L.L.C.*, 11th Dist. Lake No. 2011-L-141, 2012-Ohio-4460, ¶ 37 (reviewing de novo the trial court's interpretation of an attorney-fee provision in a contract and concluding that the trial court correctly "interpreted this provision to mean that [Fabrication Group] was entitled to recover its attorney fees for services incurred in the collection of the amount owed under the balcony railing contract"). That is, the indemnity provision expressly allows for the recovery of attorney fees from "any and all claims, demands, suits, [or] losses." (Doc. No. 12, Ex. B). *See, e.g.*, *Allen v. Standard Oil Co.*, 2 Ohio St.3d 122 (1982), paragraph one of the syllabus ("When an indemnitor expressly agrees to indemnify an indemnitee except in certain specified instances * * *, the indemnitor is obligated to indemnify the indemnitee under the terms of the agreement."). *See also Lake Pointe* at ¶ 10 (applying de-novo review to the interpretation of an attorney-fees provision of a homeowner's agreement); *Harvest Land Co-Op, Inc. v. Hora*, 2d Dist. Montgomery No. 25068, 2012-Ohio-5915, ¶ 79 (reviewing de novo the interpretation of an attorney-fees provision of a promissory

---

must construe the provision against UGM and read the Transmix Agreement in conjunction with the Naphtha Agreement.

note). Stated another way, based on the express language of the indemnity provision, the parties did not limit the recovery of attorney fees to claims, demands, suits, or losses from third parties or from either party's wrongful refusal to defend an action against an indemnitee.

**{¶25}** Having determined that UGM can recover attorney fees under the indemnity provision of the Transmix Agreement, we now turn to whether the indemnity provision is otherwise enforceable. Questions regarding the enforceability of a contract is a question of law subject to de novo review. *See Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 35 ("A determination of whether a written contract is unconscionable is an issue of law."). *See also Oldendick v. Crocker*, 8th Dist. Cuyahoga No. 103384, 2016-Ohio-5621, ¶ 41; *Aftermath, Inc. v. Buffington*, 10th Dist. Franklin No. 09AP-410, 2010-Ohio-19, ¶ 4. As we previously stated, de novo review is conducted without deference to the trial court's decision. *Matrix Technologies*, 2008-Ohio-1301, at ¶ 11, citing *Brown*, 87 Ohio App.3d at 711.

**{¶26}** On appeal, CRC argues only that the indemnity provision of the Transmix Agreement is unenforceable because "CRC did not negotiate with UGM regarding the * * * Indemnity Provision." (Appellant's Brief at 17). In support of its argument, CRC contends that "Ohio law does not permit an award of attorney fees pursuant to a contractual agreement unless the fee provision is specifically

negotiated." (Appellant's Brief at 19, citing *Vistein v. Am. Registry of Radiologic Technologists*, 342 Fed.Appx. 113 (6th Cir.2009), *Big Lots Stores, Inc. v. Luv N' Care, Ltd.*, 302 Fed.Appx. 423 (6th Cir.2008), *Scotts Co. v. Cent. Garden & Pet Co.*, 403 F.3d 781 (6th Cir.2005) and *Colonel's Inc. v. Cincinnati Milacron Marketing Co.*, 149 F.3d 1182 (6th Cir.1998)). This is not an accurate representation of Ohio law. *See Allied Indus. Scrap, Inc. v. OmniSource Corp.*, 776 F.3d 452 (6th Cir.2015) (stating that the appropriate standard applicable to contractual-fee-shifting provisions is the standard provided in *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306). *See also Wolfe v. J.C. Penney Corp.*, 10th Dist. Franklin No. 18AP-70, 2018-Ohio-3881, ¶ 28 (noting that the "line of cases [relied on by CRC] was overruled in *Allied Indus. Scrap*"); *McGowan & Co. v. Bogan*, 93 F.Supp.3d 624, 642 (S.D.Tex.2015) (discussing the Sixth Circuit's abrogation of its line of cases "preclude[ing] contractual recovery of attorneys' [sic] fees unless the attorneys' [sic] fees provision was specifically negotiated").

{¶27} The appropriate measure of Ohio law concerning the enforceability of contractual attorney-fee provisions discussed in *Wilborn* provides that "[w]hen the right to recover attorney fees arises from a stipulation in a contract, the rationale permitting recovery is the 'fundamental right to contract freely with the expectation that the terms of the contract will be enforced.'" *Wilborn* at ¶ 8, quoting *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 36 (1987). "The presence of

equal bargaining power and the lack of indicia of compulsion or duress are characteristics of agreements that are entered into freely." *Id.*, citing *Nottingdale* at 35. "In these instances, agreements to pay another's attorney fees are generally 'enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case.'" *Id.*, quoting *Nottingdale* at syllabus, and citing *Worth*, 32 Ohio St.3d at 241-243.

{¶28} "In contrast, agreements to pay attorney fees in a 'contract of adhesion, where the party with little or no bargaining power has no realistic choice as to terms,' are not enforceable." *Id.* at ¶ 9, quoting *Nottingdale* at 37, fn. 7. "To hold such provisions enforceable would be contrary to the principle that 'freedom in bargaining and equality of bargaining * * * are the theoretical parents of the American law of contracts.'" *Id.*, quoting *Neal v. State Farm Ins. Cos.*, 188 Cal.App.2d 690, 694, 10 Cal.Rptr. 781 (1961).

{¶29} Because CRC makes no argument as to how the indemnity provision is unenforceable under the standard provided in *Wilborn*, we reject CRC's argument that the indemnity provision is unenforceable. *Compare Wolfe* at ¶ 30 (rejecting "Wolfe's argument that the fee and cost shifting provisions are contrary to law" because those provisions were not "specifically negotiated" since the "specific-negotiation" line of cases has been overruled).

{¶30} Finally, CRC argues that the trial court abused its discretion by awarding UGM attorney fees because "UGM failed to prove the reasonableness of their attorney's [sic] fees." (Appellant's Brief at 21). UGM filed two post-judgment motions for attorney fees—the first was relative to Count V and the second was relative to the claims on which it prevailed under the Transmix Agreement and for the calculation of fees that the trial court previously ordered CRC to pay in its December 4 and 27, 2017 entries. (*See* Doc. Nos. 106, 107). Specifically, in its motion for attorney fees relative to the Transmix Agreement and the trial court's December 4 and 27, 2017 entries, UGM requested attorney fees as to the Transmix Agreement and a category of attorney fees noted as "co-mingled" fees between the Transmix and Naphtha Agreements. In its entry awarding UGM attorney fees, the trial court awarded a lump sum without specifically delineating what amount of attorney fees it was awarding as to which contract or category of fees. Accordingly, based on our conclusion that the trial court's attorney-fee award as to Count V is a nullity, we are unable to address CRC's reasonableness argument. Therefore, on remand, the trial court should determine the reasonableness of attorney fees relative to only the Transmix Agreement as consistent with this opinion.

{¶31} For the reasons discussed above, CRC's assignment of error is sustained in part and overruled in part.

{¶32} Having found no error prejudicial, in part, to the appellant herein in the particulars assigned and argued in its assignment of error, we affirm that portion of the judgment of the trial court.  Having found error prejudicial, in part, to the appellant herein in the particulars assigned and argued in its assignment of error, we reverse the judgment of the trial court and remand for the trial court to issue an entry awarding attorney fees relative to only the Transmix Agreement as are consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**